**Earl West BOND, Sr., Plaintiff,**

v.

**COUNTY OF DELAWARE et al.,**
**Defendants.**

**Civ. A. No. 71–2622.**

United States District Court,
E. D. Pennsylvania.

Dec. 20, 1973.

Simon S. Berman, Upper Darby, Pa., for plaintiff.

Guy G. deFuria, Chester, Pa., Edward H. P. Fronefield, Media, Pa., Melvin G. Levy, Chester, Pa., William R. Toal, Jr., Anthony R. Semeraro, Carmen Belefonte, Media, Pa., for defendants.

## OPINION AND ORDER

HUYETT, District Judge.

Before us are defendants' motions, (1) to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to 12(b)(6) for failure to state a claim upon which relief may be granted, (2) for judgment on the pleadings, and (3) for a more definite statement.

Plaintiff was employed by Delaware County from January 7, 1970 until August 8, 1970 as a prison guard at the Delaware County Prison. On August 8, 1970 he was suspended from employment as a prison guard, and on August 10, 1970 the suspension was made permanent. Plaintiff alleges that his employment was terminated because he refused

to contribute to the Republican Party of Delaware County. It is alleged that the defendants' action violated plaintiff's rights to freedom of association and due process of law as secured to him by the First and Fourteenth Amendments to the United States Constitution. Suit is brought pursuant to §§ 1 and 2 of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3) (1970). Jurisdiction is conferred by 28 U.S.C. § 1343(3), (4). No jurisdictional amount is required, Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). In his prayer for relief plaintiff seeks both injunctive and monetary relief.

Two classes of persons have been joined as defendants. The first class of defendants ("statutory defendants") consists of the County of Delaware, the County Commissioners, District Attorney, Controller and Sheriff of the County of Delaware. The second class of defendants ("non-statutory defendants") consists of those persons constituting the Delaware County Republican Board of Supervisors which body plaintiff alleges "directs and controls decisions of County employees and officers with respect to whether or not a County employee is to be retained as a County employee or discharged." The warden of Delaware County Prison, who notified plaintiff of his termination of employment, was not named as a defendant. Even though the complaint states that the defendants are being sued in both their official capacity and as individuals, it is clear from the complaint that the statutory defendants were made parties to this action for the sole reason that plaintiff considers them to be vested with powers to govern and manage the Delaware County Prison pursuant to certain state statutes. Indeed, much of the memoranda of law in this case was directed to the question whether the statutory defendants are vested with any power over the prison. It is the statutory defendants' position that their only function in regard to the prison is to approve a budget submitted by the Board of Prison Inspectors (BPI). It is the BPI, the statutory defendants contend, which governs and manages the prison. Thus, except insofar as the statutory defendants are also members of the non-statutory class, we will treat the statutory defendants in deciding their motions to dismiss as having taken no action with regard to the plaintiff either directly or as part of a conspiracy other than that with which they may be vested by state statute.

This treatment is to be contrasted with the position occupied by the non-statutory defendants. In relation to these defendants it is alleged that their power to act in a manner affecting plaintiff's employment is without regard to the parameters of any statutory authority. Thus, in analyzing plaintiff's allegations concerning actions taken by the non-statutory defendants we will not be limited to the grant of any statutory authority.

With this distinction between the defendants in mind we proceed to consider defendants' motions.

■■ Initially, we will deny the motions for a more definite statement made by all the statutory defendants other than the County of Delaware and the Commissioners of the County. The complaint is not "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . .." Fed.R.Civ.P. 12(e). See United States ex rel. Brzozowski v. Randall, 281 F. Supp. 306 (E.D.Pa.1968); 2A Moore, Federal Practice ¶ 12.18 (2d Ed. 1972). We will also deny the motions to dismiss for lack of subject matter jurisdiction made by the same statutory defendants. See Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Plaintiff's claim under the Constitution and federal statutes does not clearly appear "to be immaterial and made solely for the purpose of obtaining jurisdiction [nor is the claim] wholly insubstantial and frivolous." Bell v. Hood, 327 U.S., *supra*, at 682, 66 S.Ct., at 776.

## I. *The Section 1983 Claim*

There are two elements to a cause of action under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. There must (1) be action under color of any statute, ordinance, regulation, custom or usage of any State, and (2) the action must subject the plaintiff to a deprivation of a right, privilege or immunity secured by the Constitution and laws. District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Lavoie v. Bigwood, 457 F.2d 7 (1 Cir. 1972); Palacios v. Foltz, 441 F.2d 1196 (10 Cir. 1971); Haldane v. Chagnon, 345 F.2d 601 (9 Cir. 1965). In analyzing the actions against the statutory and non-statutory defendants respectively we will first treat the question whether there is action under color of a state statute.

### A. *Action Under Color of State Statute*

1. *Action by the Statutory Defendants.* In deciding the motions to dismiss made by the defendants, we must accept as true the allegations of the complaint. Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The complaint alleges that on April 15, 1970 the plaintiff received his normal bi-weekly paycheck to which was attached a stub itemizing certain normal deductions from his salary. Stapled to the stub was a slip of paper bearing the typewritten notation: "Bond, Earl Sr. Guard $230.00." From inquiry with another guard at the Delaware County Prison, who also happened to be a Republican Committeeman in the City of Chester, Delaware County, the plaintiff learned that the paycheck stub was an assessment against him for $230.00 to be paid to the Republican Party of Delaware County as a condition of continued employment. On or about April 30, 1970, plaintiff paid $15.00 on account toward the total assessment of $230.00 to a clerk at the Delaware County Prison who accepted payment, plaintiff alleges, on behalf of the Republican Party of Delaware County. Plaintiff subsequently received a receipt evidencing his payment of $15.00.

After April 30, 1970 the plaintiff complained to John T. Ziegler, Warden of Delaware County Prison, about the assessment. In response to plaintiff's complaint Mr. Ronald Walker, Deputy Warden of Delaware County Prison, advised plaintiff to register as a Republican if plaintiff wanted to keep his job. In June 1970 plaintiff registered as a Republican. After making the first payment of $15.00, plaintiff refused to make any further payments on the assessment.

The complaint continues that on or about August 8, 1970, Warden Ziegler suspended plaintiff from employment without giving reasons. At the time Warden Ziegler suspended the plaintiff from employment, the Warden was acting pursuant to instructions received from the defendants. At the time of suspension plaintiff was advised by the Warden that plaintiff would be granted a hearing before the Prison Board on August 12, 1970. On August 10, 1970 the plaintiff received a letter signed by Warden Ziegler notifying plaintiff that his employment by the County as a prison guard had been permanently terminated. No hearing on the reasons for suspension and termination of plaintiff's employment was ever held; no reasons have been given by the Warden for plaintiff's termination. Plaintiff alleges that the decision to terminate his employment was made by the defendants.

It is alleged that the defendants' action injured his reputation in the community. He further alleges that the termination of employment was made without reason or cause, that it is unsupported by competent evidence and in violation of his constitutional rights of due process and of freedom of association and expression. Plaintiff claims he is entitled to a due process hearing with a right to be heard, notice of reasons for dismissal, an opportunity to confront and cross-ex-

amine, to rebut adverse evidence, right to the assistance of counsel, right to an impartial hearing officer and other rights normally attendant to a fair adjudication.

■ Plaintiff contends that the statutory defendants directed that plaintiff's employment be terminated pursuant to their authority to govern the Delaware County Prison as established by the Act of May 16, 1921, P.L. 579, § 1, as amended, 61 P.S. § 408 and the Act of December 14, 1967, P.L. 846, § 2, 16 P.S. § 11482. The Act of May 16, 1921, 61 P.S. § 408, provides that the governance and management of prisons in the third, fourth, and fifth class counties is vested in a board consisting of the judges of the court of quarter sessions,[1] the district attorney, sheriff, controller and the commissioners of the county. At the time of enactment of the Act of May 16, 1921, 61 P.S. § 408, Delaware County was a third class county. Section 6 of that Act, 61 P.S. § 408 (historical note), provides that the Act will "not be construed to repeal any special laws relating to the management of jails or county prisons in the counties affected" by the Act.

Delaware County, a third-class county at the time of enactment of the Act of May 16, 1921, 61 P.S. § 408, had in effect at that time a special law placing the responsibility for governance and management of the Delaware County Prison in a Board of Prison Inspectors (BPI). The BPI consists of five persons residing in the county, three of whom are appointed by the judges of the court of quarter sessions and the remaining two appointed by the county commissioners. This special law is the Act of April 11, 1866, P.L. 588 which incorporates the provisions of a special law applicable to a Prison of the County of Chester, Act of February 1, 1839, P.L. 10. It is under the provisions of the Act of April 11, 1866, P.L. 588 that the statutory defendants contend that the authority to govern and manage the prison is in the hands of the BPI. None of the statutory defendants is apparently a member of the BPI.

By the Act of October 20, 1967, P.L. 472, § 1, 16 P.S. § 3102 (1972 Supp.) Delaware County was classified as a 2-A county. Plaintiff contends that Delaware County Prison is governed by the Act of May 16, 1921, 61 P.S. § 408, even though it is no longer a third-class county and even though the Act of May 16, 1921, 61 P.S. § 408 contained a provision saving from repeal the Special Act of April 11, 1866. Plaintiff argues initially that the Act of May 16, 1921, 61 P.S. § 408, did repeal the Act of April 11, 1866. Repeal is said to result from the manner in which the Act of May 16, 1921, 61 P.S. § 408, has been amended and re-enacted since 1921. There have been three amendments to the Act of May 16, 1921 since its original enactment. The amendments were made by the following Acts: Act of May 2, 1949, P.L. 809, § 1; Act of July 29, 1953, P.L. 1013, § 2; Act of January 25, 1966, P.L. 1577. Both the original Act and the first amendment in 1949 contained specific provisions saving from repeal any special or local laws previously enacted. The 1953 and 1966 amendments, however, contain no similar provision. Based on a rule of statutory construction contained in the Statutory Construction Act of May 28, 1937, P.L. 1019, Art. VI, § 81, 46 P.S. § 581, plaintiff argues that by omitting the saving clause from the 1953 and 1966 amendments the legislature in effect repealed the saving clause contained in the original 1921 Act and the first amendment to the Act in 1949. The rule of construction plaintiff relies on states:

> Whenever a law re-enacts a former law, the provisions common to both laws shall date from their first adoption. Such provisions only of the former law as are omitted from the re-enactment shall be deemed abrogated, and only the new or changed provisions shall be deemed to be the law

---

1. The judges have not been named as defendants in this suit.

from the effective date of the re-enactment.

Act of May 28, 1937, P.L. 1019, Art. VI, § 81, 46 P.S. § 581. It is therefore concluded by plaintiff that since January 1, 1954, the effective date of the Act of July 29, 1953, P.L. 1013, § 2, which amendment to the 1921 Act first omitted a savings clause, the savings clause of the 1921 Act and its 1949 Amendment have been repealed. The effect of this conclusion is that it can then be argued by plaintiff that the more general and exclusive terms of the Act of May 16, 1921, 61 P.S. § 408, govern over any special Acts enacted prior to January 1, 1954. *Cf.* Girard Trust Bank v. City of Philadelphia, 336 Pa. 433, 9 A.2d 883 (1939).

Having established that the provisions of the 1921 Act as amended applies to Delaware County as a third-class county, plaintiff's final hurdle is overcome by reference to the Act of December 14, 1967, P.L. 846, No. 368, § 2, 16 P.S. § 11482 (1972 Supp.). This provision, enacted less than a month after Delaware County was made a Class 2-A county by the Act of October 20, 1967, P.L. 472, § 1, 16 P.S. § 3102 (1972 Supp.) provides:

The powers and duties of county officials in a second class A county shall be the same as those set forth for county officials in counties of the third class until such time as an enactment is made specifically setting forth said powers and duties.

Thus, plaintiff contends that the statutory defendants named by him have the responsibility for governance and management of Delaware County Prison pursuant to the Act of December 14, 1967, P.L. 846, No. 368, § 2, 16 P.S. § 11482 and the Act of May 16, 1921, 61 P.S. § 408 as amended by the Act of July 29, 1953, P.L. 1013, § 2.

Defendants resist this conclusion by (1) arguing that any effect the Act of July 29, 1953, P.L. 1013, § 2 was to have as an amendment was vitiated by the failure to properly amend the original 1921 Act setting forth which sections were intended by the legislature to be amended, and (2) contending that the Act of October 20, 1967, P.L. 846, No. 368, § 2, 16 P.S. § 11482 (1972 Supp.) was limited to effect only the fees to be charged by previously third class county officials. We need not, however, enter the thicket of this already enmeshed statutory maze since it is clear that plaintiff has fatally flawed in two respects.

First, the 1953 and 1966 amendments of the Act of May 16, 1921, 61 P.S. § 408, did not repeal the original Act either expressly or implicitly. Plaintiff relies on the wrong rule of construction. The proper rule of construction is contained in § 83 of the Statutory Construction Act of May 28, 1937, P.L. 1019, Art. VI, 46 P.S. § 583 and not § 81 codified at 46 P.S. § 581. Section 83, 46 P.S. § 583 states:

A law which re-enacts the provisions of an earlier law shall not be construed to repeal an intermediate law which modified such earlier law. Such intermediate law shall be construed to remain in force and to modify the re-enactment in the same manner as it modified the earlier law.

Both the Act of July 29, 1953, P.L. 1013, § 2, and the Act of January 25, 1966, P.L. (1965) 1577 re-enacted and amended the Act of May 16, 1921, P.L. 579, 61 P.S. § 408 as that Act had been amended by the Act of May 2, 1949, P.L. 809, § 1. The latter Act contained a savings clause which, pursuant to the Statutory Construction Act, was not repealed by the later amendments to the 1921 Act. Thus, the special law of April 11, 1866, P.L. 588 incorporating the Act of February 1, 1839, P.L. 10 is still in effect.

Secondly, we find conclusive that by the Act of December 27, 1965, P.L. 1237, No. 502, §§ 5(1) and (12), 61 P.S. §§ 460.5(1) and (12) the Act of February 1, 1839, P.L. 10 and the Act of April 11, 1866, P.L. 588 were repealed. Pursuant to 61 P.S. § 460.6(b) and (c), however, the repeals do not take effect until regional correctional facilities "become available on dates and in areas designat-

ed by the Governor in proclamations declaring the availability of State correctional facilities." No such Proclamation has been made to date by the Governor of the Commonwealth of Pennsylvania in regard to the Prison of Delaware County.

Insofar then as the plaintiff's allegations assert a cause of action against the statutory defendants for violation of constitutional rights under color of any state statute, 42 U.S.C. § 1983, the motions of the statutory defendants to dismiss for failure to state a claim upon which relief may be granted must be granted. Since, however, we have concluded that plaintiff has established a cause of action against the non-statutory defendants, we will allow him to amend the complaint within thirty (30) days of this Order to join as defendants the members of the Board of Prison Inspectors of the Delaware County Prison. Fed.R.Civ.P. 15(a).

2. *Action by the Non-Statutory Defendants.* The complaint alleges that the non-statutory defendants are members of the Delaware County Republican Board of Supervisors. It is alleged that the Board of Supervisors (1) makes the policy decisions which direct and control the operations of the Republican Party in Delaware County, (2) directs and controls decisions of County employees with respect to whether a County employee is to be·retained as a County employee or discharged, and (3) directs and controls all decisions of a policy-making nature which are made by officers and employees of the County who are members of the Republican Party. As noted previously, plaintiff alleges that Warden Ziegler suspended plaintiff from employment pursuant to instructions received from the non-statutory defendants, and that the decision to terminate plaintiff's employment with the County was made by the non-statutory defendants.

The non-statutory defendants resist liability by arguing that they are private persons not subject to suit under

the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3).

■ It is clear initially that the action taken by the Warden of the Delaware County Prison was action under color of state statute. The warden's authority to terminate plaintiff's employment results solely because the state vests him with such authority. The exercise of authority vested by the State in the warden was taken, plaintiff alleges, pursuant to directions from the non-statutory defendants (and presumably the BPI), and was controlled by decisions made by the non-statutory defendants. Reading the complaint in favor of the plaintiff, as we must, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80 (1957), there can be no doubt that the plaintiff alleges the existence of an understanding between the non-statutory defendants, the managers of the prison and the warden of the prison that employees otherwise qualified who refuse to support the local political regime would be deprived of county employment and, with particularity, employment as a prison guard. These facts are sufficient to infer a conspiracy among the defendants to restrict employment in the prison to persons who are willing to support a particular political party, the natural consequence of which conspiracy the plaintiff was injured. It is, therefore, of no consequence in establishing action under color of state law that the non-statutory defendants are private persons. As the Court stated in Adickes v. Kress & Co., *supra*, 398 U.S. at 152, 90 S.Ct. at 1605:

Although this is a lawsuit against a private party, not the State or one of its officials, our cases make clear that petitioner will have made out a violation of her Fourteenth Amendment rights and will be entitled to relief under § 1983 if she can prove that a Kress employee, in the course of employment, and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in the Kress store, or to cause her subse-

quent arrest because she was a white person in the company of Negroes.

The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful; Monroe v. Pape, 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961); see United States v. Classic, 313 U.S. 299, 326 [61 S.Ct. 1031, 1042, 85 L.Ed. 1368] (1941); Screws v. United States, 325 U.S. 91, 107–111 [65 S.Ct. 1031, 1038–1040, 89 L.Ed. 1495] (1945); Williams v. United States, 341 U.S. 97, 99–100 [71 S.Ct. 576, 578–579, 95 L.Ed. 774] (1951). Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents," United States v. Price, 383 U.S. 787, 794 [86 S.Ct. 1152, 1152, 16 L.Ed.2d 267] (1966).[7]

7. Although Price concerned a criminal prosecution involving 18 U.S.C. § 242, we have previously held that "under color of law" means the same thing for § 1983. Monroe v. Pape, *supra*, 365 U.S., at 185 [81 S.Ct. at 483] (majority opinion), 212 [81 S.Ct. at 497] (opinion of Frankfurter, J.); United States v. Price, *supra*, 383 U.S., at 794 [86 S.Ct., at 1157] n. 7.

We conclude then that insofar as plaintiff's complaint alleges a conspiracy among the non-statutory defendants, the BPI and the warden, the natural result of which conspiracy could reasonably be said to have caused a denial of plaintiff's constitutional rights, Monroe v. Pape, 365 U.S. 167, 65 S.Ct. 1031, 89 L. Ed. 1495 (1961), there exits action under color of a state statute. *Cf.* Jackson v. Metropolitan Edison Co., 483 F.2d 754 (3 Cir. 1973). We must now consider whether plaintiff has been denied any constitutional rights by defendants' action.

### B. Denial of Constitutional Rights

1. *Freedom of Association.* As a result of the recent Supreme Court decisions in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), our consideration of whether the plaintiff has been denied any constitutional rights is not encumbered by the realization that the penalty imposed on the plaintiff was a loss of public employment. The doctrine that the loss of public employment is not a penalty because public employment may be considered in the nature of a privilege rather than a right has had a definitive burial in the *Perry* and *Roth* cases. Thus, it can no longer be said, as it once had been by Mr. Justice Holmes in McAuliffe v. New Bedford, 155 Mass. 216, 220, 29 N.E. 517 (1892), that a person "may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." As stated by the Court in *Perry*:

> For at least a quarter century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not act. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Speiser v. Randall, 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460].

Such interference with constitutional rights is impermissible.

We have applied this general principle to denials of tax exemptions, Speiser v. Randall, *supra,* unemployment benefits, Sherbert v. Verner, 374 U.S. 398, 404–405 [83 S.Ct. 1790, 1794–1795, 10 L.Ed.2d 965], and welfare payments, Shapiro v. Thompson, 394 U.S. 618, 627 n. 6 [89 S.Ct. 1322, 1327 n. 6, 22 L.Ed.2d 600]; Graham v. Richardson, 403 U.S. 365, 374 [91 S.Ct. 1848, 1853, 29 L.Ed.2d 534]. But, most often, we have applied the principle to denials of public employment. United Public Workers v. Mitchell, 330 U.S. 75, 100 [67 S.Ct. 556, 569, 91 L.Ed. 754]; Wieman v. Updegraff, 344 U.S. 183, 192 [73 S.Ct. 215, 219, 97 L.Ed. 216]; Shelton v. Tucker, 364 U.S. 479, 485–486 [81 S. Ct. 247, 250–251, 5 L.Ed.2d 231]; Torcaso v. Watkins, 367 U.S. 488, 495–496 [81 S.Ct. 1680, 1683–1684, 6 L.Ed.2d 982]; Cafeteria Workers v. McElroy, 367 U.S. 886, 894 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230]; Cramp v. Board of Public Instruction, 368 U. S. 278, 288 [82 S.Ct. 275, 281, 7 L. Ed.2d 285]; Baggett v. Bullitt, 377 U.S. 360 [84 S.Ct. 1316, 12 L.Ed.2d 377]; Elfbrandt v. Russell, 384 U.S. 11, 17 [86 S.Ct. 1238, 16 L.Ed.2d 321]; Keyishian v. Board of Regents, 385 U.S. 589, 605–606 [87 S.Ct. 675, 684–685, 17 L.Ed.2d 629]; Whitehill v. Elkins, 389 U.S. 54 [88 S.Ct. 184, 19 L.Ed.2d 228]; United States v. Robel, 389 U.S. 258 [88 S.Ct. 419, 19 L. Ed.2d 508]; Pickering v. Board of Education, 391 U.S. 563, 568 [88 S.Ct. 1731, 1734, 20 L.Ed.2d 811]. We have applied the principle regardless of the public employee's contractual or other claim to a job. Compare Pickering v. Board of Education, *supra,* with Shelton v. Tucker, *supra.*

Thus, the issue resolves to whether the penalty imposed on the plaintiff in this case, i. e., loss of employment for failure to contribute to a particular political party, unjustifiably infringes upon plaintiff's exercise of constitutional rights.

We are in substantial accord with the recent decision of the Seventh Circuit in Illinois State Employees Union, Council 34, American Federation of State, County and Municipal Employees, AFL–CIO v. Lewis, 473 F.2d 561 (7 Cir. 1972), cert. denied, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973). *Illinois State Employees* involved a suit by the employees of the former Illinois Secretary of State. The employees held non-civil service positions as building employees, clerical workers, license examiners and the like. They alleged that their employment was terminated because they refused to support or to become members of the political party of the new Secretary of State. The court held that absent a strong justification by the state, terminating employment for failure to adhere to or support a particular political party, infringed upon the employees' right to freedom of association. The court, after an examination of Supreme Court cases, stated that although "state interests may justify some curtailment of the political activities of public employees, it seems perfectly clear that the abject and complete surrender of a citizen's First Amendment rights could never be justified."

 It is true that in the case before us the complaint does not allege an "abject and complete surrender" of the right to freedom of association, a right clearly encompassed within the First Amendment freedoms. United States v. Robel, 389 U.S. 258, 263, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967). Presumably, the plaintiff could also contribute to an organization other than the Republican Party. And there is nothing to prevent plaintiff from voting in the general election for a person of a party affiliation different from the Republican Party. Needless to say, however, this observation proves too much. Constitutional rights need not be smothered in order for there to be a denial of that right; they need only be infringed. To require more would be to provide freedom for

only the most durable among us. When public employment is conditioned on support for a particular political regime or cause, there does not exist that "undiluted and unequivocal right" to free expression on questions of current public interest that Justice Black spoke of in Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). There Justice Black stated:

> It seems self-evident that all speech criticizing government rulers and challenging current beliefs may be dangerous to the status quo. With full knowledge of this danger the Framers rested our First Amendment on the premise that the slightest suppression of thought, speech, press, or public assembly is still more dangerous. This means that individuals are guaranteed an undiluted and unequivocal right to express themselves on questions of current public interest. It means that Americans discuss such questions as of right and not on sufferance of legislatures, courts or any other governmental agencies.

Wieman v. Updegraff, *supra*, 344 U.S. at 193–194, 73 S.Ct. at 220.

■ With particular relevance to the case before us, the Supreme Court recently articulated the interest involved in the freedom of association afforded by the First Amendment. In Kusper v. Pontikes, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973) the Court held unconstitutional an Illinois law prohibiting a person from voting in the primary election of a political party if he has voted in the primary of any other party within the preceding 23 months. In declaring the Illinois law unconstitutional the Court spoke of the right to associate with the political party of one's choice. The right to associate with the political party of one's choice is an integral part of the basic constitutional freedom afforded protection by the First and Fourteenth Amendments.

■ The Illinois law substantially restricted the voter's freedom to change his political party affiliation.

Like the plaintiff in the case before us, the plaintiff in *Kusper* was not deprived of all opportunities to associate with the political party of his choice. But it is only necessary that the restraint on the freedom protected by the Constitution be a substantial one in order that there be a violation. It cannot be doubted that the loss of employment for refusing to contribute to a particular political regime operates as a substantial restraint on the freedom to associate with the party of one's choice. The economic hardship caused by the loss of employment can be, and often is, disastrous. No reasonable person can conclude that such a hardship does not substantially restrain the exercise of free choice.

A heavy burden of justification, therefore, rests on those state officials who attempt to infringe constitutional rights even though the infringement is not an "abject and complete surrender." There can, of course, be no justification reflecting legitimate state interests for infringement of plaintiff's constitutional rights by the nonstatutory defendants. And, assuming plaintiff cannot prove his case that termination of his employment was at the direction of or as a result of a conspiracy emanating from the nonstatutory defendants, it is premature to consider at this time any justification that may be offered by the BPI if plaintiff was fired for political reasons. We must await the answer of BPI to plaintiff's complaint.

2. *Due Process of Law.* In *Perry* and *Roth* the Supreme Court also dealt with a claim that state action had denied school teachers in those cases their Fourteenth Amendment right to due process of law. In *Perry,* the Court found a claim for due process to exist; in *Roth* no such claim was found to exist. The essential distinction between the cases was that *Perry* had a property interest in continued employment based upon what *Perry* alleged to be a *de facto* tenure system at the college. In *Roth,* however, there was only an abstract desire to be rehired after the first year of employment at the college had terminat-

ed. In was not necessary in *Perry* that there exist civil service protection to have a property interest in continued employment. It was only necessary that there exist "rules or mutually explicit understandings that support . . . [the] claim of entitlement to the benefit . . . .." Perry v. Sindermann, *supra*, 408 U.S. at 601, 92 S.Ct. at 2699. *In Illinois State Employees*, the Court rejected the plaintiffs' claim to due process. The Court stated: "One who takes a 'patronage' job may not even have an expectation of keeping it when the appointing officer is replaced, let alone a 'legitimate claim of entitlement' to such a job." Illinois State Employees v. Lewis, *supra*, 473 F.2d at 563 n. 1.

A distinction in the case *sub judice* is that plaintiff alleges he began employment unaware that the job was a "patronage" job. In view of this allegation concerning lack of knowledge of the patronage nature of the employment, plaintiff could allege that he had at least an implied promise of continued employment even though he did not have a statutory or regulatory entitlement to the job. Summary dismissal by the state of an employee who had no tenure or formal contract protection was held by the Court in Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L. Ed.2d 418 (1971) to be a violation of the employee's due process rights. *Connell* involved the dismissal of a substitute school teacher who was hired without a contract, and who had her employment terminated two months later because she refused to sign a loyalty oath. The property interest injured in *Connell* was the "clearly implied promise of continued employment." Board of Regents of State Colleges v. Roth, *supra*, 408 U. S. at 577, 92 S.Ct. at 2709.

 We conclude that the lack of any allegation of an understanding or promise concerning continued employment between the plaintiff and his employer in this case precludes a finding that any property interest of plaintiff was impaired by the defendants. Thus, no due process right was violated by his summary dismissal.

Plaintiff does, however, allege injury to his reputation as a result of defendants' action. In *Roth* the Court reaffirmed cases that recognized a person's interest in his "good name, reputation, honor or integrity" the deprivation of which would necessitate due process protections. See Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Like *Roth* though plaintiff does not allege that defendants made statements "against him that might seriously damage his standing and associations in the community". Board of Regents of State Colleges v. Roth, *supra*, 408 U.S. at 573, 92 S.Ct. 2701. And any impairment the defendants may impose to deprive plaintiff of county employment for reasons of his failure to support an particular political party can no longer be a deterrent to securement of such employment. Absent then an allegation that defendants made charges impairing plaintiff's reputation or otherwise "impos[ing] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." Board of Regents of State Colleges v. Roth, *supra*, 408 U.S. at 573, 92 S.Ct. at 2707, the allegation of denial of due process cannot stand.

## II. Section 1985(3) Claim

It is clear from the complaint that plaintiff felt compelled by reason of statements made to him by his superiors, who were allegedly acting pursuant to directions from the non-statutory defendants, to give his support to the Republican Party. This support took the form both of payments from his salary and of registration as a Republican. The compulsion took the form of the loss of continued employment as a prison guard. It is not alleged, however, that registering as a Republican resulted in a change of party affiliation or was simply a change from not being registered with a political party to being registered as a Republican. Nevertheless, it is contended that the action of the non-statutory defendants establishes a cause of action under § 2 of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3).

The portion of § 1985(3) which seems most pertinent to the allegations of plaintiff's complaint state:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In Griffin v. Breckinridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) the Supreme Court construed § 1985(3) to reach private conspiracies condemned by the Act and, as construed to reach the conduct involved in that case, to be within Congress' power under the Constitution.

*Griffin* involved a suit by Black citizens who alleged that they were subjected to physical assaults on a public highway of the State of Mississippi. The plaintiffs claimed that the defendants, two white men, conspired to deprive the plaintiffs of the equal protection of the laws. In holding that the plaintiffs had established a cause of action under § 1985(3), the Court set out the following elements of a conspiracy under that section:

> To come within the legislation a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one

or more of the conspirators ·(3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

In addition, the Court stated that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." Griffin v. Breckenridge, *supra*, 403 U.S. at 102, 91 S.Ct. at 1798 (footnotes omitted). And the Court left open the question whether discriminatory conduct of a nature other than racial bias would be actionable under the "equal protection of the laws" portion of § 1985(3). *Id.* at 102 n. 9, 91 S.Ct. 1790.

The legislative history of § 1985(3) referred to by the Court in footnote nine of the *Griffin* opinion contains the following statement by Senator Edmunds:

> "[I]f . . . it should appear that this conspiracy was formed against this man because he was a Catholic, or because he was a Methodist, or because he was a Vermonter, (which is a pretty painful instance I have in my mind in the State of Florida within a few days where a man lost his life for that reason), then this section could reach it."

Cong.Globe, 42d Cong., 1st Sess., 567 (1871). Lower federal courts have not uniformly held that § 1985(3) reaches beyond even racial discrimination despite the Court's apparent intention to so read § 1985(3). Compare Hughes v. Ranger Fuel Corp., 467 F.2d 6 (4th Cir. 1972) with Stern v. Massachusetts Indemnity and Life Insurance Co., 365 F. Supp. 433 (E.D.Pa. filed October 12, 1973).

 Even were we to consider § 1985(3) to reach beyond conspiratorial action motivated by racial bias, however, we do not find in this case the "class based, invidiously discriminatory ani-

mus" necessary to establish a cause of action under that portion of § 1985(3) dealing with the denial of the equal protection of the laws. The defendants' conduct in this case was not aimed at any particular group of persons. Rather, it was aimed at all those persons who did not wish to support the Republican Party. The class deprived of employment is all persons other than Republicans. The converse would perhaps be a § 1985(3) violation; the action before us is not, however, such a violation.

Finally, since we have granted the statutory defendants' motions to dismiss, we need not consider their motions for judgment on the pleadings.