The **SCHOOL BOARD OF OKALOOSA COUNTY** et al., Plaintiffs,

v.

**Elliott L. RICHARDSON** et al., Defendants.

No. PCA 2362.

United States District Court, N. D. Florida, Pensacola Division.

Oct. 12, 1971.

Erwin Fleet, Fort Walton Beach, Fla., for plaintiffs.

William H. Stafford, U. S. Atty., Pensacola, Fla., for defendants.

## MEMORANDUM DECISION

ARNOW, Chief Judge.

Here plaintiffs school board and superintendent have brought suit against the defendants attacking the legislation first enacted by the Congress in 1950 as Public Law 874, and since amended, and appearing in 20 U.S.C.A. § 236, et seq. Under this legislation Congress provides funds for local school boards to help relieve the strain on local districts for educating federally connected children.

The complaint contains two counts. The first count alleges, on information and belief, the defendants have abused their discretion by paying to other school districts from the funds available a percentage thereof in an amount greater than the percentage paid to the plaintiff school district. The second count charges defendants have failed to act on several applications duly filed and that defendants have arbitrarily abused their discretion in refusing to take action on such applications. Both counts, by general allegations, raise constitutional questions, with the language respecting such in Count I reading as follows:

"Some of the provisions of Title 20 U.S.C. Sections 236 et seq. invidiously discriminate against the public school children of Okaloosa County, Florida and the Plaintiffs and other public school children similarly situated in that it provides for an ambiguous, vague and uncertain method or methods for distribution of such funds,"

and with the language respecting such in Count II being the same except the reference is to 20 U.S.C. 631 et seq. rather than to 20 U.S.C. 236 et seq.

The complaint, in its prayer, seeks declaratory relief and prays generally for such other orders as are deemed necessary to enforce plaintiffs' rights as adjudged and for general relief. It does not expressly seek injunction.

At the outset the Court, feeling that the case conceivably might call for a three-judge court, required the plaintiffs to file memorandum outlining in detail the constitutional challenge involved, with memorandum of authorities on that challenge, as well as the question whether a three-judge court should be convened under 28 U.S.C. § 2282, with defendants replying thereto. Plaintiffs, though not trying to amend the complaint to seek injunctive relief, filed, a day or so after their memorandum was filed, a pleading styled "Application for Convening of Three-Judge District Court" seeking the convening under the statute of such a court. This application did not expressly seek injunction, nor was injunction sought in any supplemental pleading.

Defendants filed memorandum, and a motion for judgment on the pleadings, or, in the alternative, for summary judgment. Defendants also filed a pleading styled "Defendants' Opposition to Plaintiffs' Application for Convening of Three-Judge District Court" in which they opposed the convening of a three-judge court on the grounds the plaintiffs do not seek an interlocutory or permanent injunction restraining the enforcement, operation or execution of an Act of Congress, that the constitutional questions are insubstantial, and that the Court lacks jurisdiction over this action.

Defendants' motions and plaintiffs' application were set for hearing before the Court, the hearing has been held and arguments of respective counsel heard, with the memoranda submitted also having been considered.

■ This Court concludes a three-judge court should not be convened for two reasons. One is because the complaint does not seek the injunctive relief to which the statute refers. In markedly similar circumstances the Supreme Court has made clear that a three-judge court is required only under the specific circumstances contemplated by 28 U.S.C. § 2282 and not just because the constitutionality of a federal statute is drawn in question. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed. 2d 644 (1963); Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); International Ladies' Garment

Workers Union v. Donnelly Garment Co., 304 U.S. 243, 58 S.Ct. 875, 82 L.Ed. 1316 (1938). Here, as in the cases cited, the validity of the challenged act is merely drawn in question; the complaint does not seek affirmatively to interdict the operation of the statutory scheme.

That the relief obtainable might include injunctive relief is not sufficient— it could be proper, under the Act, to convene the three-judge court only when and if it became clear such relief must be considered. Arguably, three-judge court should have been convened in *Mendoza*, but the Court held otherwise. As in *Mendoza*, on a holding, without injunction, by this Court of unconstitutionality of the challenged act the government, pending appellate review, would be free to continue to apply the statute, with defendants facing no judgment enforceable by contempt provisions.

■ Application for the three-judge court should also be denied if no substantial constitutional question is presented. Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed. 2d 794 (1962). And this court concludes the constitutional questions presented here are insubstantial.

■■ While the constitutional questions sought to be raised are not apparent from the loose allegations in the complaint, in memorandum plaintiffs contend the challenged act violates the due process clause of the Fifth Amend-

ment to the Constitution of the United States. The argument is made that the provisions of 20 U.S.C. § 238(a) and (b), under which one amount is paid for children whose parents both work and reside on federal property and only one-half that amount is paid for children whose parents work or reside on federal property (but not both) are violative of this provision of the Constitution, because these children are all educated by a local agency in the same school system at the same average pupil cost. Plaintiffs, in their memorandum, cite Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and argue no compelling government interest to justify the distinction, but that is not the test to be here applied where no constitutional personal right is involved. The applicable test here involved—and, at hearing, counsel for plaintiffs and defendants so agreed—is that the challenged congressional act violates the due process clause of the Fifth Amendment, with its analogous standard of the equal protection clause of the Fourteenth Amendment, only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification. Flemming v. Nestor, supra, 363 U.S. at page 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435.

Clearly the challenged act and these sections meet that test. Congress, for example, may well have concluded that those who both worked and resided on federal property contributed less in local school taxes than those who worked or resided, but not both, on federal property. Indeed, language contained in Report No. 2287, 81st Congress, Second Session, of the Committee on Education and Labor in the House of Representatives is to that effect.[1]

1. "Under the present pattern of school financing in the various States, most local educational agencies meet the local cost of educating their children from real-property tax revenues. Approximately half of the real-property tax required to meet the local share of the cost of educating a child is derived from taxation on residential property and half from taxation on commercial and other real property—in other words, half from taxation on homes where children live and half from taxation on the factories and offices where their parents work. The local educational agency derives no such revenue in the case of a child who lives on tax-exempt Federal property and whose parent is employed on such property. The payment per child for children living on Federal property is consequently geared to

■ Equally insubstantial is the contention that the terms of the Act are so vague and ambiguous that it violates the due process clause of the Fifth Amendment and constitutes an unlawful delegation of power. The policy of the Congress is set forth clearly in 20 U.S.C. § 236; equally clearly, the Act is neither so lacking in standards or so vague and ambiguous as to violate the Constitution, nor does it contain an unreasonable and unlawful delegation of power.

That such constitutional challenge is insubstantial is established by quick and cursory review of Davis, Administrative Law Treatise, Volume 1, Chapter 2, Delegation of Power, in which the applicable principles and authorities are discussed.

■ Plaintiffs also contend the percentage methods of classification found in 20 U.S.C. §§ 238, 239 and 635 "invidiously discriminate" against plaintiffs who, under Florida law, operate a county wide school district—with such percentage methods discriminating in favor of much smaller systems in other states. While this contention is not entirely clear, it is clear that these percentages do not manifest a patently arbitrary classification utterly lacking in rational justification.

■ Finally, plaintiffs contend Sections 241 and 640 violate the Tenth Amendment to the United States Constitution because they provide for the construction and operation of public schools, and that power is reserved to the states. Under the general welfare clause, clearly the Congress may provide, as it here provides, financial assistance to local schools, and construct and operate schools where the local boards either may not or will not do so, as provided in the Act.

The complaint here is in two counts. The second count has in it the constitutional challenge and the contention that defendants have refused to take action on several applications filed by plaintiff for funds. At the hearing, it was developed the matters filed by defendants in support of their motion established all such applications had been acted on by defendants, and counsel for plaintiffs agreed that such was so established.

Accordingly, partial summary final judgment dismissing the second count will be entered.

Insofar as the first count is concerned, partial summary final judgment holding the Act valid against the constitutional challenge contained in the count, and as elaborated upon in memorandum filed and at hearing, will also be entered.

There remains for consideration the charge contained in the first count to the effect that plaintiffs are informed and believe defendants have arbitrarily abused their discretion by paying other school districts from available funds a percentage thereof in an amount greater than the percentage paid to the plaintiff school district.

Respecting this, there is for determination defendants' contention the court lacks jurisdiction of this cause on the ground it amounts to an unconsented suit against the United States in that, if plaintiffs are successful, the result will be a judgment "which would expend itself on the public treasury or domain." They do not contend this is a case of unreviewable agency discretion; in fact, they contend the statute gives the agency no discretion.

The thrust of plaintiffs' allegations amounts to a charge of wrongdoing by public officials in the distribution of public funds.

■ The statute here involved contains no express provision for judicial review of the administrative acts in ques-

the total expenditures per child met out of local revenues by comparable school agencies in the State. Where a child lives on non-Federal property but the child's parent is employed on tax-exempt Federal property, the local education agency will derive on the average half as much in revenue as it would in the case of other children. Accordingly, the payments on the basis of children in the second category are one-half of the payments on those in the first category."

tion, nor does it expressly preclude judicial review. In such a situation it is necessary to consider whether jurisdiction is conferred by the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

The funds in question here constitute a gratuity provided by Congress to lessen the impact on local educational agencies created by Federal activities. 20 U.S.C. § 236. In cases involving veterans benefits some courts have stated that there is a distinction between judicial review in cases involving gratuitous benefits and those involving contractual obligations of the government. Acker v. United States, 226 F.2d 575 (5 Cir. 1955), cert. den. 350 U.S. 1008, 76 S.Ct. 654, 100 L.Ed. 870 (1955). However, the more compelling reason for denial of such a claim is that 38 U.S.C. § 211(a) expressly prohibits judicial review of decisions of the Veterans Administration concerning benefits, and, for this reason alone, the Administrative Procedure Act would not apply. Barefield v. Byrd, 320 F.2d 455 (5 Cir. 1963). The mere fact that a money judgment might result was not mentioned as a bar to judicial review. For these reasons, and for the additional reason that there is here a charge of wrongdoing on the part of public officials, such cases are inapposite.

■■■ The Administrative Procedure Act applies unless statutes preclude judicial review or agency action is committed to agency discretion by law. 5 U.S.C. § 701. Judicial review is not precluded by the statute here involved and, by defendants' own admission, the disbursement of the funds in question was not left to agency discretion. Final agency action for which there is no other adequate remedy in a court is subject to judicial review. 5 U.S.C. § 704. While the cases dealing with nonreviewability are admittedly conflicting, the later trend favors judicial review. Only on a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507,

18 L.Ed.2d 681 (1967). In some cases nonreviewability may be inferred from the expressed purpose of a statute. The right, however, of judicial review is ordinarily inferred when the plaintiff's interests are those sought to be protected by the statute, as, otherwise, the statutory objectives may not be realized. Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Here, the statute does not preclude judicial review and none can be inferred from the expressed purpose of the statute; agency action is not committed to agency discretion; final agency action has been taken; and Plaintiffs have no other remedy available. The court accordingly concludes jurisdiction is conferred by the Administrative Procedure Act, which "makes a clear waiver of sovereign immunity in actions to which it applies." Estrada v. Ahrens, 296 F.2d 690, 698 (5 Cir. 1961). Plaintiffs' motion for judgment on the pleadings will be denied.

■■■ However, the affidavit and certified copies of various documents filed by defendants on their face, at least, completely refute this charge of wrongdoing by plaintiffs. They show, as defendants contend, that in distributing the available funds the defendants have followed the congressional mandates meticulously, and that there has not been, as charged, any arbitrary abuse of discretion in the distributions.

As its sole matter in opposition, plaintiffs have filed affidavit, under Rule 56 (f), Rules of Civil Procedure, of the school superintendent of the county in which he says, in effect, he has no direct knowledge whether the matters set forth in defendants' supporting documents are true, that he does not believe they are, but that the complete facts are largely or exclusively under control of defendants and have not been made available to him. He alleges, and at hearing counsel contended, that in order to execute opposition affidavit he or his representative must have access to all pertinent records of defendants for examination and reproduction.

Thus, there is presented a bare bones allegation of wrongdoing on the part of the defendant public officials without anything stated to show that it rests on any factual matter or that it is anything more than an unsupported and nebulous allegation of such wrongdoing. Manifestly, the comprehensive examination and reproduction of defendants' records here sought will be expensive and time consuming both for plaintiffs and defendants. Such a wholesale fishing expedition based on nothing more than the unsupported statement of disbelief of the county's superintendent in the affidavit before the court should not be permitted.

In such a case as this, this opposition affidavit is not enough.[2] In addition to pointing out the facts that are largely or exclusively within the control of defendants, it should describe plaintiffs' attempts to secure these facts. It should set forth what facts are exclusively within defendants' knowledge, as opposed to those only largely within their knowledge, and why affiant has been unable to obtain those facts not exclusively within defendants' knowledge. It should contain the knowledge or information the plaintiffs have warranting or justifying the affiant's belief.

If plaintiffs intend to rely on evidence de hors defendants' records, to which access might be gained through such examination of records, the affidavit should say so. It should point out how wholesale examination of records of defendants might reasonably be expected to disclose arbitrary abuse and wrongdoing, particularly when the records before the Court do not disclose such, and plaintiffs apparently contend defendants' records are inaccurate and untrue. The affidavit should set forth the period of time plaintiffs believe reasonably required to complete needed discovery and the exact or at least probable nature and extent of discovery that might be needed.

Further action by this Court on defendants' motion for summary judgment will be withheld for a period of ten (10) days in order to afford opportunity for plaintiffs, if they can, to file supplemental affidavit or affidavits complying with the foregoing and establishing a basis why the motion for summary judgment should be denied, or why this Court should withhold further action upon such motion for a period of time in which plaintiffs might by discovery be able to provide factual matter justifying denial of the motion for summary judgment.

Order will be entered in accordance with the foregoing.

---

2. For discussion of this see Moore's Federal Practice, Vol. 6, pages 2875, et seq., 3 Federal Practice and Procedures, 1238. Plaintiffs here, in effect, rely on disproving defendants' credibility; they must show something more than the mere hope of discovering something, and something more than mere speculation of success.