**WILLMAR POULTRY COMPANY
et al., Appellants,**

v.

**MORTON–NORWICH PRODUCTS,
INC., and Richardson-Merrell,
Inc., Appellees.**

No. 74–1893.

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1975.

Decided July 17, 1975.

Rehearing and Rehearing En
Banc Aug. 7, 1975.

John E. Thomas, Cochrane & Bresnahan, St. Paul, Minn., for appellants.

John P. Ryan, Jr., Chicago, Ill., and Robert B. Fiske, Jr., New York City, for appellees.

Before JONES,* Senior Circuit Judge, and HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

The plaintiffs in this antitrust action, Willmar Poultry Company, Peterson-Biddick Company, and Lynn Tompt, an individual,[1] appeal from an order granting summary judgment in favor of Richardson-Merrell, Inc., (Richardson) and dismissing it as a defendant and granting partial summary judgment in favor of Morton-Norwich Products, Inc. (Norwich) and dismissing as to it all claims accruing prior to June 7, 1970. The district court entered summary judgment after determining that the plaintiffs' claims were time-barred.

On appeal,[2] the plaintiffs contend that entry of summary judgment in advance of discovery is impermissible in an antitrust case such as this, alleging violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1970). We disagree. We hold that the court properly concluded that the four-year statute of limitations of § 4B of the Clayton Act, 15 U.S.C. § 15b (1970),[3] barred the plaintiffs' action with respect to all conduct by the defendants occurring before June 7, 1970, and properly entered summary judgment without awaiting the results of discovery.

I. *Factual and Procedural Background.*

Because we direct our inquiry in this case to the procedural propriety of the district court's summary disposition of a part of the plaintiffs' action, it will prove helpful to preliminarily outline the facts from which the complaint originates and the proceedings in the district court leading to summary judgment.

A. Facts.

The plaintiffs in this action either use or buy and sell, or both, furazolidone, a broad-spectrum member of the nitrofurans group of drugs effective in combating infectious diseases, primarily in poultry. According to the complaint, Willmar Poultry Company purchases furazolidone as a feed additive for the turkeys which it hatches and grows; it also sells furazolidone to other growers. Peterson-Biddick adds furazolidone to the feed used in raising the turkeys that it grows. Lynn Tompt buys furazolidone for resale to veterinarians and feed salesmen, among others.

Norwich held the patent on furazolidone, U. S. Patent No. 2,742,462, from April 17, 1956, to April 17, 1973. During this period it marketed the drug both domestically and internationally. It marketed furazolidone domestically solely through the Hess & Clark Division of Richardson. By agreement entered into January 1, 1955, between Richardson's predecessor, the Vick Chemical Compa-

---

* WARREN L. JONES, Senior Circuit Judge, Fifth Circuit Court of Appeals, sitting by designation.

1. Plaintiffs also sue on behalf of all other persons similarly situated. The district court has not yet ruled on whether they may maintain this action on behalf of a class.

2. The district court certified this interlocutory appeal from the summary judgment and we granted review pursuant to 28 U.S.C. § 1292(b) (1970).

3. Section 4B provides as follows:

Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections. [15 U.S.C. § 15b (1970).]

ny, and Norwich, Hess & Clark acted as Norwich's domestic distributor of furazolidone. The agreement terminated December 31, 1969.

Hess & Clark marketed furazolidone domestically at prices far in excess of those at which it was marketed in other countries by licensees or subsidiaries of Norwich. Moreover, Norwich's Canadian subsidiary, Norwich Pharmacal Company, Ltd., sold furazolidone at prices significantly lower than those at which it was sold in other foreign countries. This pricing disparity gave rise to widespread clandestine importation of the drug into the United States, particularly from Italy, Israel, and Canada. To combat this importation and preserve its control over the domestic market, Norwich brought from 1963 through 1969 some 56 patent infringement actions against dealers and others attempting to market the imported drug.

Additionally, at Norwich's request, the United States Tariff Commission investigated this importation to determine if it constituted an unfair method of competition sufficiently injurious to Norwich's domestic business to warrant an order, pursuant to § 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 (1970), excluding from entry into the United States all furazolidone. Following a full investigation and publication of its findings in November of 1969, the Tariff Commission recommended to the President that such an order be issued, effective through the expiration of Norwich's patent, April 17, 1973.

B. Proceedings in the district court.

The plaintiffs filed the instant antitrust action June 7, 1974. They alleged in count I of their complaint that Richardson and Norwich conspired, in violation of the Sherman Act, to prevent the importation into the United States of furazolidone for the purpose of maintaining at anticompetitive levels the price of the domestically marketed product. They alleged that they had been prevented from earlier discovering this cause of action by the defendants' fraudulent concealment of it. They further alleged, in count II, that Norwich's furazolidone patent is void and unenforceable and has been employed by Richardson and Norwich in violation of the Sherman Act.

The defendants moved to strike the claim of fraudulent concealment. They contended that they had not concealed the cause of action. On the contrary, they asserted that all the facts underlying the action were public knowledge as a result of the Tariff Commission's investigation and report. The district court agreed and struck the fraudulent concealment claim.

■ The defendants also moved for summary judgment as to all claims accruing prior to June 7, 1970, the date four years prior to the filing of the complaint. Having found that the defendants had not concealed the cause of action from the plaintiffs, the district court concluded that the statute of limitations had not been tolled [4] and therefore entered summary judgment in favor of the defendants as to all claims arising before June 7, 1970. Because Richardson had not made any sales of furazolidone to anyone after December 31, 1969, the date of expiration of Hess & Clark's distributorship agreement with Norwich, the district court dismissed the complaint entirely as to it. The court's action had the effect of leaving the complaint intact only with respect to Norwich's activities within the limitations period.

II. *Applicable Law.*

■ The plaintiffs correctly observe that the courts do not lightly enter summary judgment on the merits in antitrust cases. The Supreme Court has explained this hesitancy in the following terms:

4. At oral argument on the motion to strike, the plaintiffs also asserted that the statute had been tolled by the defendants having induced the plaintiffs not to sue within the limitations period. The district court rejected this alternative ground for tolling and we likewise reject it. *See* III A 2 *infra.*

We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. * * * Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice." [*Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) (footnote omitted).]

Where there has been no opportunity for discovery or it has yet to be undertaken or is incomplete, the courts have applied this policy to prohibit altogether summary judgment on the merits in antitrust litigation. *See Umdenstock v. American Mortgage & Investment Co.,* 495 F.2d 589, 592 (10th Cir. 1974); *Penn Galvanizing Co. v. Lukens Steel Co.,* 59 F.R.D. 74, 80 (E.D.Pa.1973); *First National Bank v. British Petroleum Co.,* 324 F.Supp. 1348, 1360 (S.D.N.Y.1971); *Philco Corp. v. Radio Corp. of America,* 34 F.R.D. 453, 454–55 (E.D.Pa.1964).

▓▓▓ On the other hand, where there has been ample opportunity for discovery, summary judgment is appropriate in antitrust litigation, just as in any other litigation, upon a showing by the movant of an absence of any genuine issue of material fact. *See, e. g., First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Modern Home Institute, Inc. v. Hartford Accident & Indemnity Co.,* 513 F.2d 102, 109–10 (2d Cir. 1975); *Kugler v. AAMCO Automatic Transmissions, Inc.,* 460 F.2d 1214, 1216 (8th Cir. 1972). Summary judgment may be appropriate even without opportunity for discovery, however, where, as in the instant case, the ground asserted

for judgment is the statute of limitations, a defense not going to the merits of the action. *See Akron Presform Mold Co. v. McNeil Corp.,* 496 F.2d 230, 232–33, 235 (6th Cir.), *cert. denied,* 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974); *Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd.,* 185 F.2d 196 (9th Cir.), *cert. denied,* 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1950); *Philco Corp. v. Radio Corp. of America,* 186 F.Supp. 155, 158–61 (E.D.Pa.1960); *Solinski v. General Electric Co.,* 149 F.Supp. 784 (D.N.J.1957).

▓▓ Regardless of the propriety of summary judgment before discovery in an antitrust case, summary judgment is always warranted where the party resisting the motion does so by relying solely upon his pleadings and submits no evidence to rebut the moving party's conclusive demonstration of absence of a genuine issue of material fact. Fed.R. Civ.P. 56(e)[5] mandates affirmative action by a party opposing such a motion. Failure to take such action justifies a court in entering summary judgment, regardless of whether the case alleges a violation of the antitrust laws. *See First National Bank v. Cities Service Co., supra,* 391 U.S. at 289–90, 88 S.Ct. 1575; *Akron Presform Mold Co. v. McNeil Corp., supra,* 496 F.2d at 235; *Saenz v. University Interscholastic League,* 487 F.2d 1026, 1028 (5th Cir. 1973); *Gasperi v. Cinemette Corp.,* 391 F.Supp. 826, 832–33 (W.D.Pa.1975). Judge Friendly of the Second Circuit has stated the proper procedure for an opposing party under these circumstances:

When the movant comes forward with facts showing that his adversary's case is baseless, the opponent cannot rest on the allegations of the complaint but must adduce factual material which raises a substantial question of the ve-

---

5. Rule 56(e) provides in pertinent part as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

racity or completeness of the movant's showing or presents countervailing facts. [*Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir. 1972).]

 Where a party opposing a motion for summary judgment cannot, for reasons outside his control, present by affidavit facts essential to justify his opposition, a court may, pursuant to Fed.R. Civ.P. 56(f),

refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. [*Id.*] [6]

Thus, an affidavit properly submitted under Rule 56(f) has the effect of either postponing entry of summary judgment or precluding it altogether. A party seeking the shelter of Rule 56(f) must do so in good faith, however, and must conclusively justify his inability to respond adequately or not at all to the movant's affidavits:

[T]he opposing party should present his affidavit showing that the knowledge or control of the facts is exclusively or largely with the moving party and describe his attempts to obtain those facts. The mere averment of exclusive knowledge or control of the facts by the moving party is not adequate; the opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures. [6 J. Moore, *Federal Practice* ¶ 56.24 at 2876 (2d ed. 1974) (footnote omitted).]

*Accord, School Board of Okaloosa County v. Richardson,* 332 F.Supp. 1263, 1269

(N.D.Fla.1971). *See Robin Construction Co. v. United States,* 345 F.2d 610, 613–14 (3d Cir. 1965); *Peckham v. Ronrico Corp.,* 7 F.R.D. 324, 330 (D.P.R.1947), *rev'd on other grounds,* 171 F.2d 653 (1st Cir. 1948); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2741 at 734–35 (1973).

The foregoing principles control the disposition of the instant case. With them in mind, we now consider their application to the facts of the case.

### III. *Application of the Law.*

In considering whether the district court properly entered summary judgment for the defendants, we must focus upon three questions: 1) Did the defendants prove by their affidavits the absence of any fraudulent concealment of the plaintiffs' cause of action or of any other conduct by the defendants which would toll the statute of limitations? If we answer this question in the affirmative, we must next ask a second question. 2) Did Richardson prove by its affidavits that it engaged in none of the conduct alleged in the complaint within the limitations period? If we answer this affirmatively, we must then make a final inquiry. 3) Did the plaintiffs fail to comply with the requirements of Rule 56(f), thereby justifying the court in entering summary judgment as requested by the defendants?

A. Tolling of the statute of limitations.

1. Fraudulent concealment.

The plaintiffs seek to recover treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15, for violations of the Sherman Act by alleging the following wrongdoing by the defendants:

(a) [The defendants] caused the Customs Bureau and the President to prevent the importing of furazoli-

---

**6.** Rule 56(f) provides in its entirety as follows:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

done manufactured and sold by Canadian Norwich and others into the United States;

(b) refused and withheld its consent to all such importation;

(c) made repetitive use of litigation which was timed and designed principally to preclude importation into the United States of competitive furazolidone manufactured by Canadian Norwich, among others, and thereby to preserve defendants' monopoly;

(d) entered into agreements dividing markets by classes of customers;

(e) imposed tying of sale of other products to furazolidone.

[Complaint at ¶ 21, A:351–52.]

■ The plaintiffs concede that the cause of action described by these allegations accrued more than four years prior to the filing of the lawsuit. They assert, however, that the defendants fraudulently concealed the cause of action from them, thereby tolling the four-year statute of limitations. Specifically, the plaintiffs contend that they could not have known, even by the exercise of reasonable diligence, that Norwich's Canadian subsidiary was manufacturing furazolidone and selling it at a low price concurrently with Norwich's domestic manufacture of furazolidone and Hess & Clark's distribution of it at a comparatively high price. Thus, they reason, they could not have discovered the conduct described in subsections (a), (b), and (c) of ¶ 21 of the complaint, quoted above.[7]

In moving to strike the claim of fraudulent concealment, the defendants argued that the plaintiffs could have discovered, by reading the Tariff Commission's report on the illicit importation of

furazolidone and by reviewing the public testimony taken by the Commission in connection with the preparation of this report, that Norwich's Canadian subsidiary was manufacturing furazolidone and selling it at a price far below that at which Norwich was then selling it in the United States. In support of this position, they directed the attention of the district court to, among other matters, the following public testimony of Norwich's patent counsel, Bradford S. Allen, before the Tariff Commission on September 30, 1968:

Norwich's subsidiary, Norwich Pharmacal Company, Ltd., is the only manufacturer of furazolidone crystals in Canada.

\* \* \* \* \* \*

COMMISSIONER THUNBERG: Excuse me, Mr. Allen, but you referred a few minutes ago to Canadian furazolidone. Is furazolidone manufactured in Canada other than by your own company?

MR. ALLEN: It is not manufactured in Canada other than by our own subsidiary \* \* \*.

\* \* \* \* \* \*

In Canada, the Norwich Pharmacal Company, Ltd., a wholly-owned subsidiary of the Norwich Pharmacal Company [i. e., the defendant], markets an 11 percent furazolidone premix at about $.85 per pound. [A:208, 209, 212.]

Additionally, they directed the court's attention to the following passage from the Tariff Commission's final report, issued in November of 1969:

Norwich has furnished price data for 40 countries. They are the prices charged by Norwich, or by its foreign

---

7. On appeal, the plaintiffs make no effort to challenge the district court's determination that they could have discovered earlier the market division and tying activities alleged in subsections (e) and (f) of ¶ 21 of the complaint. The United States Department of Justice and one of Norwich's competitors, C. L. Jones, Inc., had called attention in 1968 and

1969—in connection with the Tariff Commission's public investigation of Norwich's complaint of unfair trade practices under § 337 of the Tariff Act, 19 U.S.C. § 1337 (1970)—to these and other activities of Norwich and Richardson as possible violations of the antitrust laws.

subsidiaries, licensees, or distributors in foreign countries. These data are business confidential except for the price of nf–180 made by a Canadian subsidiary, which is $0.85 per pound. This price is low in comparison to other prices at which the premix is sold by Norwich or its licensees in other countries. [A:282.]

The district court correctly concluded from this record that the plaintiffs could have discovered, by the exercise of reasonable diligence, their cause of action within the limitations period.

2. Inducement.

■■■■ Plaintiffs raise an additional argument, unrelated to their claim of fraudulent concealment, in support of the contention that the statute of limitations was tolled by the conduct of the defendants. They assert that the defendants, by filing numerous infringement actions against other parties, induced the plaintiffs to refrain from bringing the instant suit. They accurately cite *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), for the proposition that a party who has induced another to forego filing an action until after the limitations period for the action has run may not thereafter invoke the statute of limitations as a defense. *See also American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 559, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Akron Presform Mold Co. v. McNeil Corp., supra,* 496 F.2d at 233. Inasmuch as Norwich filed the actions in good faith to protect its legitimate interest in its patent, however, they do not constitute litigation calculated to induce the plaintiffs to refrain from filing their complaint within the limitations period and therefore do not toll the statute of limitations.

B. Summary judgment in favor of Richardson.

As we have observed, the court below properly concluded that the statute of limitations was not tolled as to either of the defendants. The court dismissed Richardson as a defendant because its subdivision, Hess & Clark, had ceased to distribute furazolidone as of December 31, 1969, the expiration date of the marketing agreement between it and Norwich. The court reasoned that Richardson was no longer in a position to violate the antitrust laws if it could no longer sell the product at issue, furazolidone.

■■■■ The plaintiffs contend on appeal, however, that the fact that Richardson made no sales of furazolidone within the limitations period is irrelevant, for, they allege, Richardson's participation in the conspiracy was not restricted to Hess & Clark's sale of furazolidone but also took the form of maintenance of a "border watch" to prevent importation of the lower-priced Canadian product, even after the distributorship agreement had expired. The plaintiffs failed to raise this issue, which is not disclosed by the pleadings, in opposition to the defendants' motions for summary judgment, however. Instead, they stood by silently and submitted pro forma affidavits under Rule 56(f), which we will discuss presently. In view of the plaintiffs' inaction, the court properly entered summary judgment, *see, e. g., Saenz v. University Interscholastic League, supra,* 487 F.2d at 1028, unless their affidavits complied with Rule 56(f).

Following the district court's entry of summary judgment, however, the plaintiffs moved to amend or alter the judgment. In a memorandum supporting the motion they first advanced the above theory—*i. e.,* that Richardson had conspired with Norwich to violate the antitrust laws by monitoring the importation of furazolidone and reporting to Norwich instances of importation. They relied upon three statements appearing in the defendants' affidavits to substantiate the theory. The district court properly refused to modify summary judgment, however, for the statements were made prior to the limitations period and refer to activities prior to the limitations period. They in no way impair the court's determination that Richardson's interest in furazolidone, not to mention its partic-

ipation in its distribution, terminated prior to the limitations period. They do not constitute any evidence to support the proposition that Richardson conspired with Norwich within four years of June 7, 1974, the date of filing of the complaint.

C. Rule 56(f).

The district court correctly concluded, from a review of defendants' affidavits and from plaintiffs' tacit acceptance of the completeness and accuracy of those affidavits, that there existed no issue of material fact on the applicability of the statute of limitations. The court reasoned, with considerable justification, that there was no cause to delay summary judgment for the completion of discovery where the evidence bearing upon the applicability of the statute of limitations, the defense raised by the summary judgment motions, was nondiscoverable because already publicly available.

Nonetheless, the plaintiffs contend that by filing affidavits pursuant to Rule 56(f) they adequately demonstrated that entry of summary judgment prior to discovery would be premature. Each of these three affidavits reads as follows in its operative language:

> 2. At this time, plaintiff cannot present by affidavit facts essential to justify opposition to the motions of the defendants dated July 25, 1974.
>
> 3. Knowledge of such facts is exclusively with and/or largely under the control of the conspiratorial defendants.
>
> 4. Plaintiff has properly and timely commenced discovery designed to elicit such facts about conspiratorial activities with the filing of an extensive first set of Interrogatories served June 24, 1974.
>
> 5. Plaintiff is desirous of maintaining its discovery program of interrogatories, document inspection and depositions, which shall be conducted in prompt and orderly fashion to elicit facts from the alleged co-conspirators. [A:431–32, 433–34, 435–36.]

Each affidavit is identical to the other except for the identity of the affiant.

 We hold that the plaintiffs failed to establish any cause for postponement by the district court of a ruling on the motions for summary judgment. Plaintiffs made no effort to demonstrate what purpose, if any, discovery would accomplish, given the evidence proffered by the defendants on the absence of fraudulent concealment and the public character of the evidence supporting the applicability of the statute of limitations. While at the same time conceding that they knew of no evidence that would enable them to show the existence of a genuine issue of material fact, the plaintiffs made no attempt to identify what, if any, facts were within the defendants' exclusive control and how, if at all, discovery would assist them in bringing those facts to light. The court correctly concluded, under these circumstances, that discovery would have served no useful purpose whatsoever. *See United States v. Halpern,* 260 F.2d 590, 591 (3d Cir. 1958).

 Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Where, as here, a party fails to carry his burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified. *See School Board of Okaloosa County v. Richardson, supra,* 332 F.Supp. at 1269; 6 J. Moore, *Federal Practice* ¶ 56.24 at 2876. *Compare Toebelman v. Missouri-Kansas Pipe Line Co.,* 130 F.2d 1016, 1018, 1022 (3d Cir. 1942).

### IV. *Conclusion.*

We agree with the appellants' general contention that summary judgment should be invoked sparingly in antitrust litigation. However, we reject the view that summary judgment is never appropriate in advance of discovery in an antitrust case. Rule 56 provides for no such exception. There may be cases where summary judgment is eminently appropriate even prior to discovery. This is particularly true where, as in this case, the district court enters summary judgment on a ground not going to the merits of the action and the party opposing summary judgment fails to demonstrate any need for discovery. Thus, having correctly determined that discovery would have been futile, the district court properly entered summary judgment on the applicability of the statute of limitations.

Affirmed.