**Earl E. NICKENS, Appellant,**

v.

**Carl WHITE, Superintendent, M.T.C.M., Dale Riley, Associate Superintendent, Gerald Higgins, Associate Superintendent, Appellees.**

**No. 78–1906.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1980.

Decided June 4, 1980.

Rehearing and Rehearing En Banc
Denied June 27, 1980.

Timothy K. Kellett, Armstrong, Teasdale, Kramer & Vaughn, St. Louis, Mo., for appellant; Earl E. Nickens filed briefs pro se.

J. Michael Davis, Asst. Atty. Gen., Jefferson City, Mo., for appellees; John Ashcroft, Atty. Gen., Jefferson City, Mo., on brief.

Before STEPHENSON and McMILLIAN, Circuit Judges, and THOMAS,* Senior District Judge.

McMILLIAN, Circuit Judge.

Appellant Earl E. Nickens, a prisoner at the Missouri State Penitentiary, appeals from a district court[1] order granting summary judgment to appellees, Carl White, superintendent of the Missouri Training Center for Men at Moberly, Missouri, and Dale Riley and Gerald Higgins, associate superintendents of that institution. In granting summary judgment the district court dismissed appellant's claim that appellees had deprived him of federally protected rights under color of state law in violation of 42 U.S.C. § 1983, when they transferred him from the Training Center at Moberly, a medium security prison, to the Missouri State Penitentiary at Jefferson City, a maximum security prison, because he refused to remove his name from a mass petition protesting prison conditions. We affirm.

Some background facts are not disputed. In early April, 1977, appellant, then incarcerated at the medium security training center, signed a petition directed to James F. Walsh, at the time Director of the Missouri Department of Social Services. (The state's prison system was part of this department.) Training center authorities obtained the petition, which was signed by over two hundred inmates, and, on April 18, requested that appellant remove his name therefrom. When appellant refused he was placed in the "administrative segregation unit" overnight and transferred the next day to the penitentiary.

■ Appellant's complaint, filed in December, 1977, alleged that appellees had denied appellant due process of law by transferring him from the training center to the state penitentiary without notice or adequate hearing in retaliation for his involvement with the prisoners' petition, and that appellees had denied his right of free expression under the first and fourteenth amendments by restricting his right to petition the government for redress of grievances. In March, 1978, the district court, Judge Filipine presiding, dismissed the transfer claim, relying on Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), and no appeal is taken from that dismissal.[2] The district court,

---

* The Honorable Daniel H. Thomas, United States Senior District Judge for the Southern District of Alabama, sitting by designation.

1. The Honorable James H. Meredith, United States Senior District Judge for the Eastern District of Missouri. Certain preliminary rulings in this case were made by the Honorable Edward L. Filipine, United States District Judge for the Eastern District of Missouri. The case was then transferred and Judge Meredith entered the order granting summary judgment which is appealed in this proceeding.

2. Appellant also argues that the district court failed to address a third claim, that the overnight confinement in administrative segregation at Moberly was imposed by appellees without minimal due process safeguards required by the fourteenth amendment under Wolff v.

McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, the complaint in this case states only two "claims," one based on "summary transfer and confinement to the [state penitentiary]," and a second based on "punishment of [appellant] for exercising his right to peacefully petition the government. . . ." Judge Filipine dismissed the first claim in March, 1978; Judge Meredith granted summary judgment dismissing the second in December, 1978. The notice of appeal did not mention the dismissal order of Judge Filipine, and counsel at oral argument specifically stated that no appeal is taken from that order.

The only indication in the record that the administrative segregation issue was raised below is a single rather conclusory assertion in appellant's brief opposing summary judgment on the right to petition claim. This assertion,

however, at that time refused to dismiss the freedom of expression claim. Appellees then answered the complaint, and filed a motion for summary judgment accompanied by an affidavit by Superintendent White alleging that circulation of a petition would threaten institutional security and that prisoners had alternative means to communicate their protests to the outside world.[3] In May, 1978, Judge Filipine denied this motion for summary judgment, because the affidavit provided only a conclusory assertion of the need for the restriction on petitioning without supporting reasons. Appellant then filed a set of interrogatories, and appellees promptly filed answers and objections.

In July, 1978, the district court, Judge Meredith presiding after transfer of the case, scheduled a trial by jury and appointed counsel[4] to represent appellant. Shortly thereafter, the court denied appellant's motion to compel more definite answers to the interrogatories.

Subsequently, appellees renewed their motion for summary judgment and provided a supplemental affidavit of Superintendent White, setting forth reasons for his refusal to allow circulation of a protest petition among inmates. On this renewed motion, the district court found that the training center had a regulation forbidding mass protest petitions by prisoners, that the regulation allowed alternative methods of expressing grievances (including individual letters by prisoners to outsiders and an official internal grievance procedure), and that the restriction on petitions was reasonably related to institutional security needs. Relying on *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the district court concluded that these findings established the absence of any violation of appellant's rights and on December 12, 1977, granted summary judgment.

The supplemental affidavit of Superintendent White states in part:

[C]irculation of grievance petitions is not compatible with the good order and security of a correctional institution, because it can lead to disorderly conduct on a large scale. The Missouri Training Center for Men at Moberly, MO, is a medium security institution; the inmates have a large degree of freedom to move about and converse with each other; circulation of a petition complaining about conditions in the institution could incite some, or many, of the inmates to action against the officials of the institution. It is my belief that requiring each inmate to pursue established grievance procedures

---

made after Judge Filipine had dismissed the transfer claim, was simply that due process could not be overlooked in punishing prisoners and that "certainly 'administrative segregation' units are presently known to this court as punishment units." No specific allegation was made that appellant's *own* overnight confinement was punishment except in its connection to his transfer to the state penitentiary. Appellant also did not detail any particular defects allegedly tainting the administrative procedure in his case.

We are mindful that the rule of construing complaints liberally to avoid summary dismissal applies with particular force to complaints brought by prisoners *pro se. E. g., Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam). However, we note also that appellant was represented during at least part of the proceedings below by counsel. In view of appellant's failure to raise the matter of his overnight confinement in administrative segregation in the district court and failure to appeal the order dismissing the part of his complaint mentioning this confinement, we do not think appellant may now obtain appellate review of the question. Therefore, we express no opinion on the merits of the due process issue.

**3.** Superintendent White's first affidavit stated:

. . . That it is affiant's belief that circulation of such petitions are not compatible with the good order and security of a correctional institution. . . . That alternatives exist by which inmates may voice complaints regarding conditions at an institution, including, (1) direct correspondence with institutional or government officers, (2) counselling with institutional caseworkers, and (3) the formalized grievance procedure established by the Missouri Division of Corrections.

**4.** John B. Morthland of Hannibal, Missouri, represented appellant below; after judgment he withdrew from the case. On appeal appellant is represented by Timothy K. Kellett of St. Louis, Missouri.

for himself, and not for inmates as a group, will be equally effective in meeting his complaints without running risks of group action. Group action places enormous pressure on other inmates and staff, which individualized action does not.

Appellees also placed in the record, however, a copy of the Missouri State Division of Correction rules governing inmate grievance procedure. The rules state specifically that the grievance procedure may be invoked by a group of inmates.

■ We therefore cannot conclude on the record before us that any general regulation prohibiting group petitions existed. Superintendent White's affidavit does give reasons that he believed it was necessary for prison authorities to prohibit the prisoners' petition in light of legitimate prison security concerns, and the affidavit states that there existed alternative means for appellant to communicate the grievances appellant attempted to raise by signing the prisoners' petition in this case. On its face the affidavit therefore justifies appellees' suppression of the prisoners' group petition because of the special problems of prison administration despite the evident restriction of appellant's right to freedom of expression. *See Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

Appellant did not directly controvert the facts alleged in Superintendent White's affidavit, but rather alleged in a counter affidavit that he could not gather information needed to enable him to respond, because he continued to be imprisoned in the state penitentiary. Appellant did, however, state his belief based on personal experience that circulation of the petition would not incite violence and that other available channels of communicating prisoner grievances would not effectively remedy any problems which led to the protest. Appellant suggests in this court, in seeking a remand for a hearing of his claim on the merits, that he intends to cross-examine officials of the training center about these matters in order to expose the alleged wrongfulness of the views expressed in Superintendent White's affidavit, and perhaps to introduce testimony of other authorities on prisons. Appellant argues that the trial court prematurely granted summary judgment under Federal Rule of Civil Procedure 56(f), which provides,

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Appellant's affidavit is, however, inadequate to support denial of the summary judgment motion or delay of the proceedings. We have said that to invoke Rule 56(f) a party

must conclusively justify his inability to respond adequately or not at all to the movant's affidavits:

[T]he opposing party should present his affidavit showing that the knowledge or control of the facts is exclusively or largely with the moving party and describe his attempts to obtain those facts. The mere averment of exclusive knowledge or control of the facts by the moving party is not adequate; the opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures.

*Willmar Poultry Co. v. Morton-Norwich Products, Inc.*, 520 F.2d 289, 294 (8th Cir. 1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976), *citing* 6 J. Moore, Federal Practice ¶ 56.24 (1974) (footnote omitted). Appellant has provided no reason that further discovery, for example, by deposition or additional interrogatories would have failed to provide the facts that he needed to oppose appellee's summary judgment motion. The record shows no request by appellant to the district court to delay decision on summary judgment in order to permit such further discovery. We

note that counsel was appointed in July, 1978, and the court did not decide the summary judgment motion until December, 1978. No reason is advanced that would justify the failure to undertake the needed discovery during this interval, much less the failure to request the court to delay its decision pending further discovery. Once counsel was appointed, of course, this additional discovery would be available despite the incarceration of appellant. "The tools and devices of discovery are more than options and opportunities. Rule 56 expressly exacts them by negative compulsion on pain of judicial denouement—saying in effect, 'Meet these affidavit facts or judicially die.'" *Southern Rambler Sales, Inc. v. American Motors Corp.*, 375 F.2d 932, 937 (5th Cir.), *cert. denied*, 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92 (1967). *See also Whitlock v. Midwest Acceptance Corp.*, 575 F.2d 652 (8th Cir. 1978). *See generally* 10 C. Wright & A. Miller, Federal Practice & Procedure § 2741 (1973).

■ We think that this requirement for diligent discovery applies with the same force in lawsuits brought by prisoners *once counsel has appeared*, as in other lawsuits. We decline to allow a prisoner simply because of his incarceration to hold quite possibly groundless litigation over the heads of prison administrators indefinitely. Of course courts must be sensitive to the special problems faced by prisoners attempting to proceed *pro se* in vindicating their constitutional rights, and we do not approve summary dismissal of such *pro se* claims without regard for these special problems. *See Remmers v. Brewer*, 475 F.2d 52 (8th Cir. 1973) (per curiam); *Hudson v. Hardy*, 412 F.2d 1091 (D.C.Cir.1968). But in this case counsel had been appointed and appellant thus had plenty of opportunity to respond to the summary judgment motion. We decline to allow appellant to compel further proceedings because he failed to take steps to pursue his claim diligently. Thus, the district court's decision was proper under Rule 56(f).

Nor does appellant's affidavit raise any issue of material fact that would preclude a grant of summary judgment under Rule 56(e). The rule provides,

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him.

Appellant's affidavit creates no controversy as to the critical facts. He alleges merely personal belief that circulation of a petition would not incite trouble, but does not deny that Superintendent's White's opinion to the contrary addresses legitimate institutional security concerns. Therefore, in this posture of the case, it is undisputed that necessities of prison security reasonably caused prison authorities to prohibit the protest petition. Appellant by affidavit also presented his opinion that alternative means of communicating grievances would not be effective in obtaining a remedy. But this allegation does not controvert Superintendent White's direct statement that alternative means of communicating grievances were available. Indeed, appellant's response seems to recognize the presence of alternative means for communication, even if appellant does not regard these means as effective enough. (It is the right to communicate grievances, not the right to have those grievances resolved in a favorable way, that the guarantees of freedom of expression invoked by appellant protect.) Therefore, we regard it as established in this posture of the case that the suppression of the petition did not prevent appellant from communicating whatever grievances he had to whomever he chose, albeit under restriction as to the manner of communication. Appellant's affidavit does not raise any constitutional question under the Supreme Court's rulings that have allowed such facially reasonable restrictions on free expression in prisons. *Pell v. Procunier*, *supra*, 417 U.S. at 823–28, 94 S.Ct. at 2804–07. *See also Bell v. Wolfish*, 441 U.S. 520, 548–52, 99 S.Ct. 1861, 1878–81, 60 L.Ed.2d 447 (1979); *Jones v. North Carolina Prison-*

*ers' Labor Union, supra,* 433 U.S. at 129–33, 97 S.Ct. at 2539–41; *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

Accordingly the judgment of the district court is affirmed.