**Danny WHEELER Plaintiff**

v.

**J. PRINCE, M.D., Medical Officer; B. Simien, A.H.S.A.; P. Celestine, H.S.A.; M.D. Morrison, Warden; and Unknown Named Agents of the Federal Bureau of Prisons Defendants**

**No. 2:02CV00090GH.**

United States District Court, E.D. Arkansas, Eastern Division.

May 12, 2004.

Austin Porter, Jr., Lea Ellen Fowler, Little Rock, AR, for Plaintiff.

Gwendolyn Dewees Hodge, Assistant United States Attorney, Little Rock, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, JR., District Judge.

Currently pending before the Court are the proposed findings and recommended disposition of the Magistrate Judge regarding plaintiff's action seeking to redress the alleged constitutional deprivations that plaintiff has allegedly suffered due to the defendants' failure to meet his serious medical needs.

After carefully reviewing the record, the Court is unable to accept the proposed

findings and recommended disposition of the Magistrate Judge which, in essence, grants defendants' Motion to Dismiss, or in the alternative, for Summary Judgment after finding "that plaintiff failed to exhaust his administrative remedies as to all claims raised in his complaint." For the reasons that follow, defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, will be denied.[1]

## I

## BACKGROUND

Plaintiff, an inmate incarcerated in federal prison in Forrest City, Arkansas, suffers from Premature Ventricular Closers, migraine headaches, back problems, and post traumatic stress syndrome. Plaintiff contends that his leg and back pain are brought on due to walking and standing; and that he has been at the correctional facility for six months and has not received medical treatment for his back pain, leg pain, heart problems and migraine headaches. Plaintiff alleges that the institution has been deliberately indifferent towards his serious medical needs by not allowing him to see a physician when he needs to.

On October 23, 2001, plaintiff filed a Request for Administrative Remedy (BP-9). On November 8, 2001, Marvin D. Morrison, Warden, rendered a decision on plaintiff's Request for Administrative Remedy observing that on November 1, 2001, plaintiff was asked to clarify his complaint by the Health Service Administrator, and that plaintiff stated that he wanted to be excluded from having to stand in line for his meals and desired to be transferred to a Federal Medical Center. Warden Morrison further noted that plaintiff had been seen in the medical facility on five different occasions: May 9, 2001, May 24, 2001, May 29,2001, August 14, 2001, and October 16, 2001; that plaintiff had been evaluated by a consulting cardiologist (Thomas N. Stern, M.D.) on October 3, 2001, for his heart condition, and that he needed to review the plaintiff's medical records from the Veterans' Administration, before further action could be taken. Warden Morrison further concluded that plaintiff had received proper medication and denied plaintiff's BP-9 Request for Administrative Remedy to be transferred to a Federal Medical Center, pending further recommendations from the plaintiff's cardiologist.

In responding to the alleged times that Warden Morrison contends that plaintiff had been seen by the medical staff, plaintiff makes the following observations:

(1.) May 24, 2001—plaintiff had blood pressure and temperature checked;

(2) May 29, 2001—plaintiff had chest pain, but was not seen by the doctor;

(3) August 6, 2001—plaintiff was not aware of appointment (Institution contends plaintiff did not show up for appointment).

(4) August 14, 2001—plaintiff had back x-rayed;

(5) October 16, 2001—plaintiff saw nurse, due to being sick, and was given an appointment for three weeks later.

---

1. The Court adopts the Magistrate Judge's finding that plaintiff's complaint should not be dismissed "due to his technical failure of service of process." The record reflects that plaintiff effected personal service on all defendants by certified mail, but did not serve the United States Attorney and the Attorney General of the United States. Plaintiff instituted this action pro se. In addition, the United States Attorney for the Eastern District of Arkansas has entered his appearance in this action as attorney for defendants and "the United States of America, on behalf of the Defendants ...." See: Defendants' Motion To Dismiss, or In the Alternative, Motion For Summary Judgment.

Plaintiff further avers that there have been numerous occasions that he has requested to see the physician, but was not allowed to do so even though he was experiencing tremendous pain; and that he was seen by an eye physician ten or twelve weeks prior to November 2001, but has not received his prescription glasses.

On November 19, 2001, plaintiff appealed Warden Morrision's decision to the Regional Director Ronald G. Thompson. Director Thompson in denying plaintiff's appeal on December 12, 2001, noted that the consulting cardiologist suggested that further treatment be withheld until plaintiff's medical condition could be confirmed by reviewing the medical records from the Veterans' Administration Hospital; that plaintiff should not be excluded from having to stand in the chow line or from having to stand in the line at the commissary due to the fact that sedentary lifestyle could result in blood clots developing causing the plaintiff's health to be at risk; and that transfer to a Federal Medical Center was not warranted since plaintiff was being appropriately medicated.

On January 6, 2002, plaintiff filed an appeal with the Bureau of Federal Prisons. Plaintiff asserted in his appeal that as of January 6, 2002, the consulting cardiologist had not received plaintiff's medical records from the Veterans' Administration Hospital; that he had requested an incline bed, as recommended by his doctor, as well as a medical mattress, but his request was not granted. Plaintiff further asserted that he wakes up at night with severe chest pains, and that when he consumes the nitroglycerine, it gives him migraine headaches and elevates his blood pressure, which in turn causes him to suffer from premature ventricular closures. On March 14, 2002, plaintiff's appeal to the Bureau of Federal Prisons was denied.

On April 10, 2002, plaintiff was taken to Baptist Memorial Hospital, in Memphis, Tennessee, with an admitting diagnosis of ventricular tachycardia—a condition whereby the heart rate exceeds 100–120 beats per minute. While at Baptist Memorial Hospital, plaintiff had a electrophysiologic study performed.

On May 21, 2002, Dr. Thomas Stern, who is associated with Baptist Memorial Hospital, sent a letter to Edna Prince, M.D., the clinical director at the Forrest City Federal Prison, stating that as it relates to plaintiff's conditions, there are three methods to treat it, namely, by medications, ablation, or an implanted defibrillator. Dr. Stern stated that plaintiff does not meet the criteria for an implanted defibrillator, and that the ablation procedure is a difficult procedure that has no assurance of success. Dr. Stern recommended that plaintiff be placed on amiodarone, and to perform an EKG for once a week for the first month of medication therapy.

On June 27, 2002, plaintiff, proceeding *pro se*, filed this § 1983 action, contending that he was being subjected to cruel and unusual punishment, by not having his serious medical needs met, in violation of the Eighth Amendment to the United States Constitution [2]. The thrust of plaintiff's assertions is that the named defendants played a role in depriving him of his Federal Constitutional right to have his serious medical needs met and dealt with. Defendants filed a Motion to Dismiss, or in the alternative, for Summary Judgment asserting, essentially, that plaintiff failed to exhaust his administrative remedies "as to all claims" as required by the Prison

---

**2.** The Court appointed Austin Porter, Esq., and Lee Ellen Fowler, Esq., on September 15, 2003, to represent plaintiff and were directed to respond to the proposed findings and recommendation of the Magistrate Judge.

Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(a). Alternatively, defendants assert "even if the Court finds that the Plaintiff has exhausted his administrative, the Plaintiff's complaint should be dismissed for failure to state a claim, or in the alternative, summary judgment granted for the Defendants."

## II.

## DISCUSSION

Motion To Dismiss

■ In resolving a motion to dismiss, a court presumes all factual allegations in the complaint to be true and accords all reasonable inferences to the non-moving party. *Loe v. Armistead,* 582 F.2d 1291, 1295. (4th Cir.1978). In addition, a *pro se* civil rights complaint must be construed more liberally than pleadings filed by lawyers. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.1978).

■ Defendants, in arguing that plaintiff's claims must be barred because plaintiff did not exhaust the administrative remedies available to inmates, do not describe or express which claims that plaintiff allegedly failed to exhaust. Defendants' Exhibit B is an affidavit executed by an attorney representing the Forrest City Federal Prison Unit which describes the inmate appeal process and asserts a conclusive allegation that "plaintiff has not exhausted his administrative remedies regarding the issues raised" without describing which claims plaintiff failed to exhaust. Inasmuch as exhaustion is an affirmative defense, defendants must raise and prove that plaintiff did not exhaust administrative remedies. Inasmuch as defendants have not not met this burden, the Court denies defendants' motion to dismiss for failure to exhaust administrative remedies. (See: *Foulk v. Charrier,* 262 F.3d 687, 697 (8th Cir.2001)) (stating that the assertion that a plaintiff prisoner failed to exhaust all available administrative remedies is an affirmative defense and it is the burden of the defendants to plead and prove it).

■ Moreover, after carefully reviewing the record, the Court is persuaded that plaintiff has demonstrated that he has exhausted the administrative remedies. As previously observed, on October 10, 2001, plaintiff filed a BP–9 form requesting administrative relief which was denied by Warden Morrison on November 8, 2001; on November 19, 2001, plaintiff appealed the Warden's decision to Regional Director Ronald G. Thompson which was denied on December 12, 2001; and on January 6, 2002, plaintiff appealed to the Bureau of Federal Prisons which was denied on March 14, 2002. In addition, plaintiff argues persuasively that the thrust of his complaint is "inadequate medical care" and, accordingly, the central issue is "medical" and given his general medical condition, it would be impossible to separate one medical problem from another because the ailments all affect each other.

Relative to the argument that plaintiff failed to exhaust his administrative remedies due to plaintiff's failure to include the names of defendants Celestine, Simien and Morrison as well as identifying their titles or positions in his administrative grievances, the Court is of the view that 42 U.S.C. § 1997e(a) requires an inmate to provide in his administrative grievances as much relevant information about his claim, including the identity of those directly involved in the alleged deprivations, as the inmate reasonably can provided. There is nothing demonstrating that plaintiff had or reasonably could have obtained any relevant information beyond that he included in his grievance. See: *Brown v. Sikes,* 212 F.3d 1205 (11th Cir.2000) ( stating that absence of evidence that inmate possessed, or reasonably could have obtained, any additional relevant information to include

in grievances did not preclude finding that inmate adequately exhausted his administrative remedies as required under 42 U.S.C. § 1997e(a)).

Summary Judgment

The magistrate judge's recommendation, in essence, grants defendants' alternative requested relief for summary judgment on plaintiff's claims if there is a finding that plaintiff exhausted his administrative remedies. In substance, defendants argue that there is an "absence of a genuine issue of material fact" regarding plaintiff's claims of not receiving treatment for his serious medical needs and retaliation.[3]

■ Inasmuch as there is a strong policy of liberal construction for the pro se prisoner litigant and, in addition, the grant of summary judgment is a final adjudication on the merits, the Court is persuaded that "the fair notice requirement" which advises a pro se prisoner of his right to file counter-affidavits or other responsive evidence and that he be cautioned to the fact that his failure to respond might result in the entry of summary judgment against him should have been served on plaintiff by the magistrate judge which was not. See: *Nickens v. White*, 622 F.2d 967 (8th Cir.1980) (observing that "courts must be sensitive to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and we do not approve summary dismissal of such pro se claims without regard for

these special problems") and citing *Hudson v. Hardy*, 412 F.2d 1091(D.C.Cir.1968).[4] See also: *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir.2003) (observing that a district court bears the responsibility of ensuring that a pro se prisoner receives fair notice of summary judgment requirements in understandable language calculated to apprise an unsophisticated prisoner of his or her rights and obligations under the summary judgment rule).

Accordingly, the Court does not adopt the Magistrate Judge's recommendation of summary judgment on plaintiff's claims against defendants as well as defendants Celestine, Simien and Morrison affirmative defense of qualified immunity with regard to plaintiff's claims and, therefore remands this action to the Magistrate Judge for further proceedings. However, since the Court appointed Austin Porter, Esq., and Lee Ellen Fowler, Esq., to respond to the proposed findings and recommendation, the Magistrate Judge may elected to permit counsel to respond to the defendants' request for summary judgment instead of serving fair notice on plaintiff.

---

**3.** Defendants argue that plaintiff's grievances did not raise the issue of retaliation. While the record does not reflect that plaintiff specifically asserted the term "retaliation," the Court is of the view that a liberal analysis of his grievances reveals a claim for retaliation. For example, plaintiff asserted that since the filing of the first grievance he has not been allowed to see the doctor and that his "no standing pass" was revoked. As previously noted, the allegations of a pro se litigant are entitled to a liberal construction.

**4.** The court in *Hudson v. Hardy* made the following declaration:

We hold that before entering summary judgment against appellant [a pro se prisoner litigant], the District Court, as a bare minimum, should have provided him with a fair notice of the requirements of the summary judgment rule. We stress the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required.