David CARTER F–3999

v.

Julius T. CUYLER, Supt. at S.C.I.G., et al.

Civ. A. No. 75–2379.

United States District Court, E. D. Pennsylvania.

July 7, 1976.

Jack J. Levine, Supervising Atty., Mary Beth Seminario, Student Atty., Civil Rights for Inmates, Philadelphia, Pa., for plaintiff.

Margaret E. Anderson, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff, David Carter, instituted this complaint[1] under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, and the Eighth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343. Defendants are the Superintendent of the State Correctional Institution at Graterford, a Major and a Sergeant of the Guards, and a guard. Carter alleged that these defendants acted individually and in concert to deprive him of his constitutional rights by subjecting him to "cruel and unusual punishment" in contravention of his rights to the equal protection of the laws and due process of law.

The complaint alleges that Carter is an inmate at Graterford; that on the morning of August 6, 1975, defendant Swank, a correction officer (guard) at Graterford accosted Carter in the dining hall, told him he was skating on thin ice and threatened to get him; thereafter he searched Carter's cell; when the search revealed nothing, Swank told the other guards to get Carter; following that incident, Swank harassed him every day. On August 14, 1975, Carter executed the affidavit to the complaint which was filed August 19, 1975.

Carter charges that Swank's conduct constituted a threat upon his life. He asserts his belief that his cell was searched more than the cells of other inmates. He charges further that defendants, Superintendent Cuyler, Major Mauger and Sergeant Cole have participated in a scheme to deprive him of his constitutional rights in that they had knowledge of Swank's abusive conduct and failed to take any action to prevent or curtail it.

Plaintiff seeks an award of damages from the named defendants, claiming that as a result of their conduct he has suffered aggravation of a pre-existing ulcer; that he requires daily medication for his nerves; and that he has lost his appetite and is unable to sleep.

Defendants have moved for summary judgment. The motion is supported by affidavits in accordance with Rule 56, F.R. C.P. Subsection (e) of that Rule provides:

"(e) . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

---

1. Carter filed the complaint *pro se*. However, in the subsequent proceedings before this Court, he has been represented by able student counsel under the supervision of a practicing attorney under Local Rule 9½.

*See Willmar Poultry Co. v. Morton-Norwich Products, Inc.,* 520 F.2d 289 (8th Cir. 1975); *Robin Construction Co. v. United States,* 345 F.2d 610 (3d Cir. 1965).

As will hereafter appear, Carter has failed to carry the burden of Rule 56(e) and his failure is fatal to the maintenance of this action.

█ I am mindful of the special indulgence required in considering *pro se* complaints. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Nevertheless, it is clear that in spite of this special indulgence, summary judgment will be granted where warranted. *See Tunnell v. Wiley,* 514 F.2d 971 (3d Cir. 1975).

Examination of the material submitted discloses that the institution's regulations authorize the correctional officers to deal with minor infractions on an informal basis. The verbal reprimand and the search of Carter's cell by Swank was pursuant to that authority and was prompted by minor infractions of dining hall rules. Carter's was not the only cell searched. On that same morning, August 6, 1975, other cells were searched and other inmates were reprimanded. One week after this incident Carter was interviewed by his counsellor who suggested that he resolve the problem by seeing one of the Majors of the Guard. Carter did thereafter, on August 18, 1975, have an interview with a Major Schildt, as a result of which Carter consented to move to another cell block and to accept a different duty assignment which removed him from contact with Swank. This disposition of the matter was with the knowledge and approval of the Superintendent.

The institution's medical records (submitted with the affidavits) disclose that Carter received medical attention on two occasions between August 6 and August 18. He was given antibiotics and antidepressant medication only. The records also disclose treatment for a pre-existing ulcer and administration of medication for a nervous condition and inability to sleep on dates prior to August 6, 1975.

Carter's countervailing affidavits establish only that the verbal reprimand was overheard by other inmates. Carter's own affidavit simply repeats what is set forth in his complaint, with the addition of a statement to the effect that "this conspiracy is based partly on racial animus" with no factual elaboration whatsoever.

█ I am satisfied that defendants have carried their burden of establishing the absence of any material issue of fact for trial. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Plaintiff has failed to controvert the facts set forth in defendants' motion and supporting papers. The conclusory statement charging a racially motivated conspiracy is not enough. *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972). Plaintiff's attempt to defeat the motion for summary judgment may not rest upon the hope, as expressed in his brief (p. 5), that further discovery may develop the essential facts to disclose the existence of a conspiracy. *See First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

What remains for determination is whether, on the present record, defendants are entitled to summary judgment as a matter of prevailing substantive law. For the reasons hereafter stated, I conclude that they are.

### Claim Under § 1983

The essence of Carter's claim is that he has been subjected to "cruel and unusual punishment" as a consequence of a continuous pattern of mental abuse inflicted upon him by Guard Swank with the knowledge of the remaining defendants.

█ Guard Swank is charged with having personally committed the acts here in question. It is necessary, therefore, to consider whether that conduct amounts to "cruel and unusual punishment". At the outset, it is clear that not all conduct sounding in tort for which liability may be imposed under state law constitutes "cruel and unusual punishment" under the Constitution. *See Gittlemacker v. Prasse,* 428 F.2d 1 (3d Cir. 1970) (allegation of improper

medical treatment); *Kontos v. Prasse*, 444 F.2d 166 (3d Cir. 1971) (allegation of inferior medical treatment); *Kent v. Prasse*, 385 F.2d 406 (3d Cir. 1967) (allegation of dangerous working conditions).

■ A state's prison administration and its prison disciplinary procedures are not under the supervisory direction of the federal courts. *Ford v. Board of Managers of New Jersey State Prison*, 407 F.2d 937, 940 (3d Cir. 1969). The appropriate grounds for federal court intervention were set forth in *Breeden v. Jackson*, 457 F.2d 578, 580 (4th Cir. 1972):

> "While modern authority has considerably broadened prisoner's rights, prison discipline remains still largely within the discretion of the prison authorities and federal courts will interfere only where paramount federal constitutional or statutory rights intervene. . . . Under the guise of protecting constitutional rights, however, federal courts do not have the power to, . . . usurp the responsibility that rests with the executive branch for the management of prisons. It is only when the deprivations of prison confinement impose conditions of such onerous burdens as to be of constitutional dimensions that courts may intervene in prison management. So long as the rules of prison management are 'not so unreasonable as to be characterized as vindictive, cruel or inhuman,' so long as they 'are necessary or reasonable concomitants of imprisonment', so long as the regulations do not involve punishments or restraints 'intolerable in fundamental fairness,' so long as the rules are not exercised 'in such a manner to constitute clear arbitrariness or caprice', no constitutional rights are infringed." (Footnotes omitted)

Applying this standard to the verbal reprimand and accompanying cell search, the treatment of which plaintiff complains cannot constitute an "onerous burden." *See Lanza v. New York*, 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962).

The type of conduct which gives rise to an Eighth Amendment claim has generally consisted of one or more of the following: (1) conduct which is shocking to the conscience or violates fundamental fairness; (2) punishment generally disproportionate to the offense; and (3) punishment beyond legitimate penal aims. *See Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); *Anderson v. Nosser*, 438 F.2d 183 (5th Cir. 1971), *modified en banc*, 456 F.2d 835 (5th Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972).

In attempting to elucidate the scope of the Eighth Amendment's proscriptions, the courts have relied upon several imprecise measures, including: "the dignity of man," *Trop v. Dulles, supra*; "developing concepts of elemental decency," *Jordan v. Fitzharris*, 257 F.Supp. 674, 679 (N.D.Cal.1966); and "a nonstatic, moral precept designed to curb treatment which offends contemporary standards of decency." *Anderson v. Nosser, supra*.

■ By a liberal reading, the complaint charges mental and psychological abuse.[2] There is serious doubt that verbal abuse or psychological distress alone are sufficient to support a civil rights claim (*see Cook v. Whiteside*, 505 F.2d 32 (5th Cir. 1974); *Reynolds v. Swenson*, 313 F.Supp. 328 (W.D. Mo.1970); *Rodgers v. Westbrook*, 362 F.Supp. 353 (E.D.Mo.1973)), but even assuming such to be sufficient, the facts in this case do not rise to mental abuse so egregious and extreme as to violate standards of decency prevalent in a civilized society. Carter bases the psychological charge on Swank's statement (to the effect that Carter was skating on thin ice and that he (Swank) would "get" him) as a threat on his life. In light of the context in which the statement was made, the characterization is entirely unreasonable. It is quite apparent that the statement was made as a warning to Carter to insure compliance with regulations. Further, the complaint of "daily harassment" loses its impact when

---

2. There is no allegation, and no evidence, of physical abuse.

viewed against the fact (as disclosed by the records submitted with the affidavits) that within two weeks after the incident, Carter was transferred away from Swank's jurisdiction.

Viewed in the best possible light, the complaint states no claim of violation of civil rights against Swank, the actor. As for the remaining defendants, since the claim against them is based entirely on their failure to put a stop to Swank's conduct, a fortiori, the claim against them must likewise fail. Further, the record refutes the claim that they did nothing to correct the condition complained of, for it appears without question that they acted upon Carter's complaint and arranged to transfer him (with his approval) to avoid further contact with Swank. This administrative resolution of the problem was accomplished within a reasonable period of time, but not before Carter, with unseemly haste, had filed this civil rights suit.

### Claim Under § 1985(3)

Carter's allegations under § 1985(3)[3] may be dealt with briefly.

■ To state a claim under § 1985(3), plaintiff must allege and support with the requisite factual specificity the following elements: (1) a conspiracy by the defendants; (2) designed to deprive plaintiff of the equal protection of the laws; (3) the commission of an overt act in furtherance of that conspiracy; (4) a resultant injury to person or property or a deprivation of any right or privilege of citizens; and (5) defendant's actions were motivated by a racial or otherwise class-based invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *Accord*: *Pitt v. Coxe*, 65 F.R.D. 355, 356 (E.D.Pa.1975); *Mimms v.*

*Philadelphia Newspapers, Inc.*, 352 F.Supp. 862, 866 (E.D.Pa.1972).

■ Plaintiff's first burden is to plead specific facts supporting the allegations of conspiracy. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Pitt v. Coxe, supra*, at 356; *Everett v. City of Chester*, 391 F.Supp. 26, 28 (E.D.Pa. 1975). In *Everett*, the court dismissed a claim brought under § 1985(3) because it was "totally devoid of the requisite factual specificity required to state a claim," on the basis of the following allegation:

"In doing the acts and things above complained of, the Defendants were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive the Plaintiffs' rights guaranteed to Plaintiffs under the Constitution."

In the instant case, the factual allegation relied upon by plaintiff reads as follows:

"I think that this conspiracy is based partly on racial animus."

This conclusory allegation is insufficient to establish a § 1985(3) claim. Even interpreting plaintiff's papers with the indulgence required by *Haines v. Kerner, supra*, the only possible basis for a charge of conspiracy among defendants is that the Superintendent, the Major and the Sergeant knew of Swank's treatment of Carter and failed to do anything to stop it. Mere knowledge, however, is insufficient to sustain a claim of conspiracy under § 1985(3). *Byrd v. Local Union No. 24, Int. Bro. of Electrical Workers*, 375 F.Supp. 545, 558 (D.Md.1974).

The plaintiff cites *Bond v. County of Delaware*, 368 F.Supp. 618 (E.D.Pa.1973) as supporting the claim of conspiracy. *Bond* affords no support. In that case, a prison guard charged that he was dismissed from

---

**3.** Section 1985(3) reads in pertinent part:

"If two or more persons in any State or Territory conspire . . ., for the purpose of depriving either, directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . .; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to

be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

his employment because of his failure to contribute funds to a political party. The court determined that the complaint under § 1983 was sufficient as against the members of the county board of supervisors of the political party. The § 1985 claim was dismissed against all defendants, including the county board of supervisors of the political party, for failure to show a class-based invidiously discriminatory animus.

For all of the foregoing reasons, defendants' motion for summary judgment will be granted.