**Charles JACKSON**

v.

**Julius T. CUYLER et al.**

**Civ. A. No. 76–2606.**

United States District Court,
E. D. Pennsylvania.

June 15, 1977.

Mark Sobel, Indigent Prisoner Litigation Program, Philadelphia, Pa., for plaintiff.

Mark N. Cohen, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

### MEMORANDUM

GORBEY, District Judge.

■ Plaintiff's complaint seeks an order that defendant release certain disability checks to the plaintiff. An affidavit in support of defendants' supplementary motion for summary judgment shows that, as respects equitable relief, the matter is moot,

since plaintiff is no longer incarcerated in the State Correctional Institution at Graterford, Pennsylvania, and on April 5, 1977, was given possession of the aforesaid checks. *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *North Carolina v. Rice,* 404 U.S. 245, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971).

The complaint seeks an award of damages against each defendant in the sum of $10,000, plus interest on the amount of the checks for the time they were withheld from plaintiff.[1]

With respect to the damage claim, the complaint must be dismissed for failure to state a claim upon which relief can be granted. Exhibit 2, of Docket Entry 9, is a directive of William B. Robinson, Commissioner of Correctional Institutions of Pennsylvania, which was issued to all Superintendents. It states:

> "If an inmate has an active outside savings account upon admission to the Institution and chooses to maintain the account he may do so.
>
> Deposits of any personal funds may be made by mail to these established accounts subject to internal institutional procedures for withdrawal of funds and mail regulations.
>
> This supersedes any previous memorandum or directive on this subject and copies should be posted accordingly."

Exhibit 1 establishes that the checks were withheld from plaintiff only because he refused to comply with the new procedures. Exhibit 3 is an official communication directed to the plaintiff which informed him of the new policy.

Under the new regulation, "all checks received from an outside source must be processed through our Business Office or Inmates Accounting, before an inmate is permitted to sign a cash slip and necessary letter-head (sic) that will allow or permit the total or any amount of money sent out. In order to do this a (sic) inmate must first sign the check received and inmate Jackson refuses to do so." Exhibit 1, *supra.*

Exhibit "B" to defendants' original motion is an affidavit of the Administrative Assistant to the Superintendent of the Graterford Institution. It states that the procedure required "is necessary for security reasons; to protect inmates from thefts and forgeries and to protect mailroom workers from charges of stealing incoming checks. The procedure provides for an orderly method of keeping records on checks coming into the Institution.".

The United States District Courts have not been granted supervisory powers over a state prison's administration. *Ford v. Board of Managers of New Jersey State Prison,* 407 F.2d 937 (3d Cir. 1969); *Carter v. Cuyler,* 415 F.Supp. 852 (E.D.Pa.1976); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

The circumstances under which the district court may properly intervene in state prison administration have been well stated in *Breeden v. Jackson,* 457 F.2d 578, 580 (4th Cir. 1972).

> "Under the guise of protecting constitutional rights, however, federal courts do not have the power to, and must be careful not to, usurp the responsibility that rests with the executive branch for the management of prisons. It is only when the deprivations of prison confinement impose conditions of such onerous burdens as to be of constitutional dimensions that courts may intervene in prison management. So long as the rules of prison management are 'not so unreasonable as to be characterized as vindictive, cruel or inhuman,' so long as they 'are necessary or reasonable concomitants of imprisonment', so long as the regulations do not involve punishment or restraints 'intolerable in fundamental fairness,' so long as the rules are not exercised 'in such a manner as to constitute clear arbitrariness or caprice', no constitutional rights are infringed." (Footnotes omitted)

---

1. The prayer for relief, as well as the Magistrate's Report, which was adopted by the court, make it clear that the only issue involved pertains to the plaintiff's checks.

The regulation is a reasonable one and enforcement in this case violates no constitutional right of the plaintiff. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system". *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Since there was no confiscation nor theft of plaintiff's property by the defendants, the case is distinguishable from the cases subsequent to *Lynch v. Household Finance Corporation,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) such as *Russell v. Bodner,* 489 F.2d 280 (3d Cir. 1973); *Lathan v. Oswald,* 359 F.Supp. 85 (S.D.N.Y.1973); *Schumate v. People of State of New York,* 373 F.Supp. 1166 (S.D.N.Y.1974).

The application of the aforementioned principles of law to the facts of this case require the conclusion that the complaint fails to state a claim for which relief can be granted.

### ORDER

AND NOW, this 15th day of June, 1977, upon consideration of defendants' motion for summary judgment, the memoranda in support of and in opposition thereto, and for the reasons given in the accompanying Memorandum, it is ORDERED that defendants' motion is GRANTED AND THE COMPLAINT IS DISMISSED WITH PREJUDICE.