**Scott C. McADAMS, Plaintiff,**

v.

**REGENTS OF the UNIVERSITY OF MINNESOTA, the University of Minnesota Law School, C. Peter Magrath, Robert F. Grabb and Others Unknown to Plaintiff, Defendants.**

**Civ. No. 3–80–320.**

United States District Court,
D. Minnesota,
Third Division.

March 3, 1981.

Dean L. McAdams, Thiel, Sorenson, Thiel & Campbell, Minneapolis, Minn., for plaintiff.

Thomas Tinkham and Marianne D. Short, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

In this "reverse discrimination" case against the University of Minnesota Law School, plaintiff claims officers of the University of Minnesota unfairly discriminated against him and in favor of minorities in their law school admissions policies during the school years 1977–1979. Now in his senior year at William Mitchell College of Law, plaintiff claims monetary and punitive damages against defendants. The issue now before the court is on defendants' motion for summary judgment.

The complaint is in two counts and alleges causes of action under the civil rights statutes. Count I sets forth a cause of action under 42 U.S.C. § 1981. The crux of plaintiff's claim under Count I is that when defendants learned plaintiff was not a minority they withdrew a law school place which allegedly had been reserved for him. In Count II plaintiff alleges that, through their special minorities admission program, defendants effected an illegal quota system to determine admittees for the academic years of 1977–78 and 1978–79. Plaintiff additionally argues that the University Law School employed retaliatory measures to exclude his admission in 1979.

Defendants argue on this motion that plaintiff lacks standing to challenge the minorities admissions program because plaintiff, on account of his low admission rating, would not have been admitted even if the special admissions program had not been in force.

The action was filed on May 23, 1980; discovery was completed January 31, 1981. Defendants' motion for summary judgment was filed January 26 and heard February 9.

Defendants' motion for summary judgment on Count I is GRANTED. Count II is dismissed for lack of subject matter jurisdiction.

*Count I*

■ Count I applies only to the academic year 1978–79 and sets forth a cause of action under 42 U.S.C. § 1981. That section provides, *inter alia*, that, "(a)ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ..."

With respect to Count I, the undisputed facts establish that plaintiff was placed on the deferred list in 1978. Plaintiff's application was rejected by a letter dated May 24, 1978. In a letter dated that same date and apparently written by mistake, plaintiff was notified that because he did not make a timely commitment to attend, the space previously assigned to him would be offered to another applicant. The letter further stated that if there was any misunderstanding warranting reinstatement, that plaintiff was to inform the school immediately. Plaintiff admits that he received the May 24, 1978 letter of rejection.

Plaintiff asserts, and for purposes of this motion the court assumes to be true, that plaintiff received the May 24 commitment letter before he received the May 24 letter of rejection, McAdams Deposition at 97, that upon receipt of the commitment letter plaintiff promptly called someone at the law school to confirm his "reservation," *Id.*, at 100, and that during the course of that conversation plaintiff was told that there was a mistaken identity and that he is to disregard the May 24 commitment letter. *Id.* at 103.

Plaintiff was mailed a second letter of rejection on May 26. Undaunted by the two letters of rejection and the telephonic notice of rejection and persisting in his belief that the May 24 commitment letter was the truth, plaintiff mailed a letter dated May 30, 1978 again asking that the space reserved for him be reinstated.

With respect to Count I plaintiff's theory is that there was a second Scott McAdams, that the second Scott McAdams was a member of a minority group, that the May 24 letter of commitment was intended for the Scott McAdams who was a minority and that when plaintiff called someone[1] at the law school to attempt to reinstate the space reserved for him, responsible officials at the law school became aware of the fact that plaintiff was not a minority and as a consequence plaintiff's application was rejected. However, in response to an inquiry as to whether he had factual support for his theory, plaintiff said:

> I just have a belief. I don't have any facts. One of the things that came to my mind when I was talking to other people about what had happened was that when my voice was heard it was clear from my voice it (sic) was not a member of a minority. That was suggested to me as a possibility of the mistaken identity. I don't know if it is true. I don't have any additional facts to support that.

McAdams's deposition at 175. The lack of factual support for plaintiff's theory was not due to a lack of investigation. Indeed, he pursued that theory with fervor. Plaintiff mailed postcards to persons listed as S. McAdams in the telephone directory, he unsuccessfully attempted to locate a S. McAdams who was allegedly listed on a candidate referral list and one who was allegedly a graduate student at the University. Plaintiff also asserts that during an interview at a St. Paul employment office he was told that there was another Scott McAdams and that that person was a member of a minority group. *Id.*, at 173. However, plaintiff failed to submit by affidavit or otherwise the statement of the employee at the St. Paul employment office and to the extent that he has conducted further discovery, that discovery has not uncovered any additional factual support for this theory on Count I. Moreover, with respect to Count II, plaintiff asserts that his application was automatically rejected. That position presupposes that the May 24 letter of commitment was simply drafted and mailed

---

1. Plaintiff could not recall who it was that he spoke to, the number that he called or the point in time that he called. Plaintiff recalled only that he did call and that the person with whom he spoke was a woman. McAdams Deposition at 101–102.

in error. Plaintiff's Brief, at 2, n.1, Appendix A.

In summary, Count I of plaintiff's complaint is based on little more than fanciful speculation. Though plaintiff has submitted an affidavit in opposition to defendants' motion, that affidavit does not controvert any material question of fact, it sets forth only self-serving beliefs concerning the ultimate conclusion.

█ The court is mindful of the burden our court of appeals places upon a party moving for summary judgment. *See e. g., Goodman v. Parwatikar,* 570 F.2d 801, 803 (8th Cir. 1978). However, it is well established that a party opposing such a motion may not rest on the pleadings, Rule 56(e), Fed.R.Civ.P.; *Security National Bank v. Belleville Livestock Commission Co., Inc.,* 619 F.2d 840, 848 (10th Cir. 1979). Plaintiff cannot rely on conclusory statements or unsubstantiated allegations to oppose such a motion. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–290, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968); *Chromalloy American Corporation v. Sun Chemical Corporation,* 483 F.Supp. 116, 118 (E.D.Mo.1980); *Carter v. Cuyler,* 415 F.Supp. 852 (E.D.Pa.1976). Nor is the mere hope that further discovery may disclose genuine issues of fact sufficient to defeat a well pleaded motion for summary judgment, *Carter,* 415 F.Supp. at 855, for to do so would give all parties the right to a full blown trial and thereby defeat the very purpose of Rule 56. *See, First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). That doctrine has particular force in a case such as this where discovery has been completed and plaintiff admits that he has no factual support for his theory.

*Count II*

█ In Count II plaintiff challenges the law school's special risk admissions program which was in effect during the academic years 1977–78 and 1978–79. The special risk admissions program provided that the committee could admit not more than 15 applicants as special risk admittees from "among educationally and culturally disadvantaged students or members of minority groups who do not meet usual admission requirements, but do have a PFYA * of 8.0 or better." Plaintiff's Brief, Appendix M. The special risk admissions program was redrafted in 1979 apparently in light of *Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).

The PFYA, predicted first year average, is a score based on weighted averages of the LSAT score and the applicant's undergraduate grade point average. In 1977 plaintiff was a nonresident; his PFYA was 10.4. Defendant's answer to Interrogatory No. 13. The last person admitted from the non-resident waiting list in 1977 had a PFYA of 11.78. *Id.* There were 210 nonresidents and approximately 100 residents with a higher PFYA than plaintiff's in 1977. *Id.* Thirteen applicants were admitted that year under the special risk admissions program.

In 1978 plaintiff was a resident applicant; his PFYA was 10.51 and the last person admitted that year had a PFYA of 11.41. There were 136 resident applicants with a higher PFYA than plaintiff's and twenty applicants were admitted under the special risk admissions program in 1978. *Id.*[2]

Plaintiff did not apply for admission in 1979. However, had he applied, his PFYA would have been 10.35. The last resident applicant admitted in 1979 had a PFYA of 11.03; there were approximately 96 resident applicants with a higher PFYA than plaintiff's in that year. The special risk admissions program was not in force in 1979.

---

\* This term is explained in the next paragraph.

**2.** Two non-minority applicants with lower PFYAs than plaintiff's were admitted in 1977 and 1978. Affidavit of Marilyn Dean. Those applicants were admitted under the regular admissions program which is not challenged in this suit.

In 1977 plaintiff applied to the University of Minnesota law school as well as to, among others, Stanford, Iowa, Colorado, Arizona and Lewis & Clark.[3] His application was rejected by those schools. In 1978 he again applied to the University of Minnesota, Iowa and Colorado law schools and was again rejected by each of those law schools. After having been rejected plaintiff filed complaints with the Department of Health, Education and Welfare (HEW) in which plaintiff alleged that the schools maintained discriminatory admissions policies. Deposition McAdams at 26–35. HEW found no evidence of discrimination, *Id.*; that finding was upheld on appeal to the national office.

For purposes of this motion defendants admit that a certain number of seats were reserved for the special risk admissions program in the academic years 1977–78 and 1978–79, that non-resident applicants with unadjusted PFYAs lower than plaintiff's PFYA were admitted in 1977 or 1978 under the special admissions program, and that non minorities were not entitled to or otherwise considered under the special risk admissions program. Defendant argues, however, that absent the special admissions program plaintiff would not have been admitted, thus he suffered no injury as a result of the program and consequently has no standing to challenge the special admissions program.

Plaintiff argues that the question of whether he would have been admitted absent the special admissions program goes to causation rather than standing. The principal issue presented to the court by this motion, therefore, is whether plaintiff has standing to challenge the special admissions program.

The law with respect to standing is less than clear. The United States Supreme Court has recently adopted a standing requirement which requires some showing of causation. In *Warth v. Seldin*, 422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975), the Court adopted a test requiring plaintiff to "establish that, *in fact*, the asserted injury was the consequence of the defendants' actions, or that prospective relief *will remove* the harm." (Emphasis added.) The following year the United States Supreme Court appeared to retract somewhat from *Warth.* In *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) the court stated that the relevant inquiry in making the standing determination is whether plaintiff "has shown an injury to himself that *is likely* to be redressed by a favorable decision." (Emphasis added.) However, in *Regents of University of California v. Bakke*, 438 U.S. 265, 281 n. 14, 98 S.Ct. 2733, 2743 n. 14, 57 L.Ed.2d 750 (1978) the court noted that "even if Bakke had been unable to *prove* that he would have been admitted in the absence of the special program, it would not follow that he lacked standing..... The question of *Bakke's* admission *vel non* is merely one of relief." (Emphasis added.) *Id.* Plaintiff relying on that language argues that the court thereby rejected the causation requirement as an aspect of standing.

We disagree.

The *Bakke* court continued, noting that, [t]he constitutional element of standing is plaintiff's demonstration of any injury to himself that is likely to be redressed by (sic) favorable decision of his claim. [citing *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975)][4] The trial court found such an injury, apart from failure to be admitted, in the University's decision not to permit Bakke to compete for all 100 places in the class, simply because of his race.... Hence the constitutional requirements of Art. III were met.

---

3. Plaintiff is presently a graduating senior at William Mitchell College of Law. His record indicates that he ranked in the lower fourth of his class academically.

4. The likely to be redressed test noted is that of *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) rather than the more restrictive causation in fact test of *Warth.*

*Id.* The court thereby retained the requirement that plaintiff make some showing of causation to establish standing. Plaintiff has not made that showing here. In 1977 there were 310 applicants ahead of him, in 1978 there were 136 ahead of him and the special admissions program was abandoned in 1979. Plaintiff's alleged injury is therefore "not likely to be redressed by a favorable decision." Plaintiff argues that notwithstanding his relative position he still may have been admitted. Plaintiff's theory is that those applicants ahead of him on the waiting list may have withdrawn their applications, accepted positions in other schools, or for various reasons decided not to attend.

Unrefuted facts indicate otherwise. The acceptance rate was in fact 54% in 1977 and 54% in 1978. Defendant Grabb's Answers to Interrogatories. Applying those rates there were at least 160 applicants ahead of plaintiff in 1977 and 68 in 1978. To suppose, as plaintiff urges, that even those applicants may have withdrawn or decided not to attend is speculation of the highest order. Indeed, to allow plaintiff to prevail on such an argument would permit all applicants of all professional schools to proceed past a summary judgment motion upon the mere supposition that the applicant might somehow have been accepted. The court declines to adopt such a rule and is not unmindful of the settlement value such a rule might have.

It might be argued that plaintiff's inability to compete for all available seats is a sufficient injury to grant plaintiff standing. *See Bakke,* 438 U.S. at 281 n.14, 98 S.Ct. at 2743 n.14. That injury may be sufficient where there is some relief available, as where the court could simply order the school to allow plaintiff to compete for all seats, *Doherty v. Rutgers School of Law-Newark,* 487 F.Supp. 1291 (D.N.J.1980). However, in a case such as this where plaintiff would never have been admitted absent the special program and where the alleged discriminatory program no longer exists, there is no relief that can be afforded. Certainly the court could not reinstate the special admissions program and then direct the school to consider plaintiff's application as a special admittee, for the special admissions program is the very program which plaintiff seeks to have declared unconstitutional. Moreover, plaintiff is entirely free to apply at this time to the law school; he does not need an order of this court to do so. Under those circumstances an order of this court on the now abandoned special admissions program would be advisory only and plaintiff's alleged injury is not likely to be redressed by such a decision. This court lacks the power to make such a ruling. *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). *See also Ledford v. Delancey,* 612 F.2d 883 (4th Cir. 1980) (employee who lacked the legal qualifications for the job he had been holding lacked standing to sue for an alleged retaliatory discharge in violation of First Amendment rights, for the employees, "only relief would be declaratory, and under such facts, our opinion would be merely advisory. That is beyond a proper exercise of our power." *Id.* at 886.) *See also Donnelly v. Boston College,* 558 F.2d 634 (1st Cir.) *cert. denied* 434 U.S. 987, 98 S.Ct. 618, 54 L.Ed.2d 483 (1977).

■ The court interprets *Bakke,* 438 U.S. at 280 n.14, 98 S.Ct. at 2743 n.14 to require at least some showing of causation. The mere allegation of a constitutional violation is not sufficient particularly where no remedial relief is available. Such an interpretation is consistent with the purposes of the standing requirement as it assures that the decision of the federal court is not merely gratuitous and thus inconsistent with the case or controversy requirement of Article III, *Simon,* 426 U.S. at 38, 96 S.Ct. at 1924, and "assures that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), quoted with approval in *Simon,* 426 U.S. 38 n.16, 96 S.Ct. 1924 n.16.

■ Plaintiff argues, but has not pleaded, that he was denied admission for the 1979–80 academic year by defendants' retaliatory conduct. The alleged retaliatory conduct was defendants' refusal to timely mail plaintiff an application for admission for the 1979–80 academic year. Defendants deny having refused plaintiff application forms, Defendants Answer to Interrogatory # 2, and plaintiff admits that he did not even attempt to pick up application forms at the University, Deposition, McAdams at 204. Plaintiff was at that time a third year law student, residing in St. Paul, and thus, with no great effort, could have simply gone to the law school to pick up application forms. Under those circumstances any injury which plaintiff might have suffered is of his own making.

After a careful review of each of plaintiff's claims the court is satisfied that there is no genuine issue of material fact and that defendants are entitled to judgment in their favor. Even if plaintiff were to proceed to trial it is very doubtful that he could prove damages. Plaintiff is now a graduating senior at William Mitchell College of Law. He has failed to present any factual support for his theory on Count I and the unrefuted facts establish that he would not have been admitted to the University Law School absent the special risk admissions program. Finally, plaintiff's unpleaded allegations concerning the 1979–80 academic year are less than substantial. Based on that record plaintiff's perseverance in this apparently personal crusade is difficult to understand.

■ Defendants' motion for summary judgment on Count I is GRANTED. Count II is dismissed for lack of subject matter jurisdiction.[5]

---

5.  A court has jurisdiction to determine its jurisdiction. *United States v. United Mine Workers of America*, 330 U.S. 258, 292 n.57, 67 S.Ct. 677, 695 n.57, 91 L.Ed. 884 (1947). In granting defendants summary judgment on the jurisdictional facts the court is compelled to dismiss for lack of subject matter jurisdiction.